124 N.J. Super. 94 (1973)
304 A.2d 771
EDISON BUFF, INDIVIDUALLY AND TRADING AS J. BUFF & SON, PLAINTIFF-APPELLANT,
v.
PIETRO GIGLIO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted April 24, 1973.
Decided May 21, 1973.
*95 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Mr. Herbert New argued the cause for the appellant (Messrs. Brenner, New & Brenner, attorneys).
Mr. Jerrold B. Goldstein argued the cause for the respondent (Messrs. Goldstein & Toto, attorneys).
PER CURIAM.
In this contract action plaintiff appeals from a judgment for defendant entered on a jury verdict in the County District Court and from the denial of his motion for a judgment n.o.v. (R. 4:40-2).
Plaintiff, a steam pressing appliance dealer, instituted this action demanding $1,650 which represented the unpaid balance on two contracts for the sale of used and rebuilt machinery to defendant, a custom tailor. The form complaint *96 contained the four counts usually found in District Court actions of this type i.e. 1) book account; 2) goods sold and delivered; 3) reasonable value of goods sold and delivered; and 4) account stated. (A fifth count was added seeking the recovery of $300 on a check issued to plaintiff by defendant which was not paid because of insufficient funds.)
Defendant, in his answer, generally denied the allegations of the complaint and asserted five separate defenses  1) Statute of Frauds; 2) lack of consideration; 3) breach of express and implied warranties of merchantibility; 4) that the services rendered by the plaintiff in connection with the sale of the goods was not performed in a workmanlike manner; and 5) breach of contract. Defendant in two counts counterclaimed for damages, essentially urging breach of express and implied warranties of merchantibility.
The factual background of the dispute was that in December 1969 plaintiff sold to defendant a pressing machine, boiler, iron and condensation unit for an agreed price of $1,900. In February 1970 plaintiff sold to and installed for defendant a sleeve-blocking machine for an agreed price of $500. Defendant made a payment on the contract in October 1970 of $400 and a second payment in February 1971 of $400. In June of 1971, approximately eighteen months after the first transaction, a third payment of $300 was tendered by check but it was not honored because of insufficient funds, whereupon plaintiff filed his complaint.
Plaintiff testified that he made normal maintenance calls during the first year the equipment was installed in defendant's shop and that there were no claims that the equipment was not functioning with the exception of a specific complaint and problem relating to a malfunctioning pilot light in the boiler. Defendant on the other hand testified that he had constant trouble with the equipment and that it only worked for a few days over the two-year period generating constant calls by him to plaintiff's office to complain. Without specifying dates, defendant testified that he offered to return the machine a few times when he "was tired" of it.
*97 A defense witness, Dartley, who for many years had operated a cleaning establishment and who had done pressing work for defendant opined that the rebuilt equipment was totally inadequate  that the pressing machine was bulky and probably more than twenty years old. He further testified that defendant was required to have him assist in his pressing work and that for a time Dartley's bill to defendant was between $7.50 and $10 per week.
At the close of the proofs, the Court granted plaintiff's motion to dismiss the counterclaim but permitted the jury to consider as a defense to plaintiff's action for the unpaid balance, defendant's affirmative defense of breach of warranty.
In its instructions to the jury the court gave them the option of an "all or nothing" choice of verdicts, advising them that if they found the plaintiff had preponderated, he would be entitled to "one lump sum" and that on the other hand if they found that the plaintiff had not "provided a preponderance of legal evidence" they were to return a verdict for the defendant of "no cause for action." The jurors during deliberations asked for a clarification as to what rule would be applicable if they voted "no cause for action" or if they voted for the plaintiff. The court in response to the question instructed them that they would return a verdict for the plaintiff for the total amount due of $1,650, or if on the other hand they found "no cause for action", the plaintiff would not be entitled to "any funds".
We are satisfied that the trial court committed error in the manner in which it structured the causes of action and articulated them to the jury.
The record clearly supports plaintiff's contention that defendant did not reject the goods involved nor effectively cancel the contract and accordingly is liable to plaintiff for the unpaid balance of the contract price. However, rejection is not a prerequisite to an action by a buyer for damages for breach of warranty. All that is required where goods have been accepted, see N.J.S.A. 12A:2-714, is *98 notification to the seller "within a reasonable time after [the buyer] discovers or should have discovered [the breach]." N.J.S.A. 12A:2-607(3)(a). Here the evidence was sufficient to support a finding that such notification had been given.
The transactions between the parties here were governed by the Uniform Commercial Code, the pertinent portions being 

N.J.S.A. 12A:2-602. Manner and Effect of Rightful Rejection.
(1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller
........
(3) The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this Chapter on Seller's remedies in general (12A:2-703),

N.J.S.A. 12A:2-606. What Constitutes Acceptance of Goods
(1) Acceptance of goods occurs when the buyer
(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their non-conformity; or
(b) fails to make an effective rejection [subsection (1) of 12A:2-602] but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them, or
(c) does any act inconsistent with the seller's ownership; but if such act is wrongful as against the seller it is acceptance only if ratified by him.
(2) Acceptance of a part of any commercial unit is acceptance of that entire unit.

N.J.S.A. 12A:2-607. Effect of Acceptance; ...
(1) The buyer must pay at the contract rate for any goods accepted.
........
(3) Where a tender has been accepted
(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy: ...

N.J.S.A. 12A:2-703. Seller's Remedies in General.
Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect *99 to any goods directly affected and, if the breach is of the whole contract (12A:2-612), then also with respect to the whole undelivered balance, the aggrieved seller may
........
(e) recover damages for non-acceptance (12A:2-708) or in a proper case the price (12A:2-709);
........

N.J.S.A. 12A:2-709. Action for the Price
(1) When the buyer fails to pay the price as it becomes due the seller may recover ... the price,

N.J.S.A. 12A:2-714. Buyer's Damages for Breach in Regard to
Accepted Goods.
........
(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount ...
On the record here and the operative provisions of the Uniform Commercial Code the court, having properly held that there was acceptance of the goods by the defendant-buyer and conversely no effective revocation of that acceptance, should have held defendant liable for the balance of the purchase price as a matter of law. No factual issues were generated on the issue of reasonable value and consideration. Significantly, the counterclaim in its two counts does not seek recission or cancellation of the contract but rather money damages on the basis of breach of warranty. Cf. Hydrick v. Mehlman's, Inc., 253 S.C. 652, 172 S.E.2d 824 (1970); Annot., 17 A.L.R.3d 1010, 1085 (1968).
Defendant-buyer's remedy is found in N.J.S.A. 12A:2-715 i.e. for specific damages flowing from breach of warranty, Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960); Rudolph v. Huckman, 267 A.2d 896 (Del. Super. 1970), and the issues raised by the counterclaim should have been presented to the jury for resolution.
Our determination that plaintiff had made out a case for recovery of the balance of the purchase price does not call for the entry of judgment in his favor for that amount. Since the trial court erred in striking defendant's counterclaim *100 for damages for breach of contract, there will have to be a new trial on the issues raised by the counterclaim.
Accordingly, the judgment is reversed and the cause remanded to the trial court for a new trial consistent with this opinion.
Reversed.