HENSLEY v COLONIAL DODGE, INC.

OPINION OF THE COURT

1. SALES—WARRANTIES—IMPLIED WARRANTIES—MERCHANTABILITY—
DISCLAIMER OF WARRANTIES—STATUTES.

A warranty of merchantability is implied in a contract for the
sale of goods where the seller is a merchant in respect to goods
of that kind unless it is excluded by language that is part of
the contract which mentions merchantability in writing or
otherwise makes plain that there is no implied warranty, and a
statement that no warranties, express or implied, were made
by the dealer, in small print on the reverse side of an automo-
bile purchase agreement was not sufficient to exclude an im-
plied warranty of merchantability (MCLA 440.2314,
440.2316[3][a]; MSA 19.2314, 19.2316[3][a]).

2. SALES—WARRANTIES—IMPLIED WARRANTIES—BREACH OF IMPLIED
WARRANTIES—TENDER OF DELIVERY—LATER PERFORMANCE—
STATUTES.

An implied warranty is breached when tender of delivery is made
and does not extend to later performance of the goods unless
this is expressly provided for (MCLA 440.2725[2]; MSA
19.2725[2]).

3. DAMAGES—MEASURE OF DAMAGES—SALES—BREACH OF WARRANTIES
—STATUTES.

The measure of damages for breach of warranty is generally the
difference between the value of the goods at the time and place

REFERENCES FOR POINTS IN HEADNOTES
[1] 67 Am Jur 2d, Sales §§ 461, 495.
[2] 67 Am Jur 2d, Sales § 319 *et seq.*
[3] 67 Am Jur 2d, Sales §§ 667, 744–752.
[4] 30 Am Jur 2d, Evidence § 1086.
[5] 67 Am Jur 2d, Sales § 735.
[6] 75 Am Jur 2d, Trial §§ 469–488.
    76 Am Jur 2d, Trial §§ 1250–1270.
[7] 67 Am Jur 2d, Sales § 434.
[8] 67 Am Jur 2d, Sales § 447.
[9] 67 Am Jur 2d, Sales §§ 490–501.

accepted and the value they would have had if they had been as warranted; in addition, incidental and consequential damages may be recovered (MCLA 440.2714[2], [3]; MSA 19.2714[2], [3]).

4. Motions—Directed Verdict—Evidence—Sales—Breach of Warranties—Damages.

The grant of a defendant automobile dealer's motion for a directed verdict was error where the court had before it evidence from which, if viewed in the light most favorable to the plaintiff purchaser, it could find a breach of an implied warranty and the amount of damages that flowed therefrom.

5. Sales—Warranties—Creation of Express Warranties—Misrepresentation.

A sign posted at an automobile dealer's lot which states "USED CARS 1 YEAR WARRANTY" does not create an express warranty; rather, where the dealer claims that there was no warranty there is a misrepresentation to the buyer that there is a warranty, and the buyer's remedy is to be based upon misrepresentation.

6. Trial—Directed Verdict—Findings of Fact—Conclusions of Law—Court Rules.

A trial court sitting without a jury is required to set forth its findings of fact and conclusions of law when granting a motion for directed verdict (GCR 1963, 504.2, 517.1).

Concurrence in Part, Dissent in Part by V. J. Brennan, J.

7. Sales—Warranties—Creation of Express Warranties—Statutes.

*A sign displayed at an automobile dealer's lot which read "USED CARS 1 YEAR WARRANTY" created an express warranty where the buyer of a car was aware of the statement on the sign and where there is nothing in the record which could reasonably be construed as being clear affirmative proof of any fact which would take the statement out of the sales agreement; the statement became a part of the "basis of the bargain" for purposes of a statute which provides for creation of express warranties (MCLA 440.2313; MSA 19.2313).*

8. Sales—Warranties—Construction.

*A defendant automobile dealer who displays a sign indicating that his used cars have a one-year warranty should be held to a construction of the sign's language which a purchaser of a used*

*automobile would reasonably hold; therefore, the statement "USED CARS 1 YEAR WARRANTY", absent explanations to the purchaser clearly indicating otherwise, means that the seller warrants that used automobiles which he sells will be suitable for transportation under normal use for a period of one year.*

9. SALES—WARRANTIES—DISCLAIMER OF WARRANTIES—INCONSISTENT LANGUAGE—STATUTES.

*Language printed on the reverse side of an automobile purchase agreement which clearly disclaims any warranty is inoperative to negate an express warranty which is created by clear language displayed on a sign at the dealer's lot because the terms of the two statements cannot reasonably be construed to be consistent with each other (MCLA 440.2316; MSA 19.2316).*

Appeal from Macomb, Robert J. Chrzanowski, J. Submitted February 5, 1976, at Lansing. (Docket No. 23968.) Decided June 24, 1976.

Complaint by Timothy Hensley against Colonial Dodge, Inc. for damages for breach of warranty and misrepresentation in the sale of an automobile. Directed verdict for defendant. Plaintiff appeals. Reversed and remanded.

Wayne County Consumer Protection Agency (by *Alan Kellman,* Staff Attorney), for plaintiff.

*Anthony B. Roshak,* for defendant.

Before: M. J. KELLY, P. J., and V. J. BRENNAN and DANHOF, JJ.

DANHOF, J. On February 13, 1974, the plaintiff brought the present action seeking to recover on three counts against the defendant in connection with the sale of a used automobile. At the nonjury trial on April 4, 1975, the trial court granted the defendant's motion for a directed verdict at the close of the plaintiff's proofs.

On May 16, 1973, the plaintiff entered a pur-
chase agreement with the defendant to buy a 1969
Plymouth Roadrunner automobile. On the back of
the agreement in small print, the following "condi-
tion" is stated:

"No warranties, expressed or implied, are made by
the dealer with respect to used motor vehicles or motor
vehicle chassis furnished hereunder except as may be
expressed in writing by the dealer for such used motor
vehicle or motor vehicle chassis, which warranty, if so
expressed in writing, is incorporated herein and made a
part hereof."

When the plaintiff visited the defendant's used car
lot, he observed a sign which read: "Colonial
Dodge USED CARS 1 YEAR WARRANTY."

At the trial, the plaintiff testified that when he
first received possession of the car on May 18,
1973, he drove it three or four blocks when he
noticed the windshield wipers and the brake lights
were not functioning properly. He took the car
back to the defendant to correct these problems.
When he next received the car from the defend-
ant, the plaintiff stated he had driven it "half way
home" when the car started to lose compression
and it slowed down to 20 or 25 miles per hour. The
engine also sounded as if it were "missing quite
badly". When the plaintiff arrived home with the
car, which was about six miles from the defend-
ant's lot, he asked his brother to come over to look
at the car. The plaintiff's brother first looked at
the car about two or three hours after the plaintiff
had driven the car off the defendant's lot.

Unable to get the car running again, the plain-
tiff then took the car to a service station, which
kept the car for about one week. At the end of this
period of time, the plaintiff was able to see the

inside of the engine, which through the work of the service station was now open to view. He stated that he saw "busted and bent push rods".

The plaintiff went back to the defendant with some of these push rods. The record is not clear as to how long it was after he saw the broken push rods that he returned to the defendant, but it was no more than four days. The plaintiff first talked to one man at the defendant's lot, who stated that the plaintiff could get a 25% discount on parts and labor. The plaintiff next talked to the manager at the defendant's lot, who told the plaintiff he would have the mechanics check into it. At this point, the plaintiff had the car towed to the defendant's dealership.

The manager next informed the plaintiff that the engine would have to be replaced. He asked the plaintiff if he would try to get a replacement engine. The plaintiff did locate one. However, upon bringing it to the defendant, the plaintiff was informed by the manager that the replacement motor would not fit this particular car. The plaintiff then had the engine put in the car by the party from whom he had purchased it. After this work was done, the plaintiff testified that he had problems with the clutch pedal and the transmission.

The complaint in this matter contains three counts. The first count relates to the nonreceipt of the certificate of title by the plaintiff. The second count alleges that the defendant warranted by implication that the automobile was of merchantable quality and fit for use and the purposes intended. The third count alleges that the defendant misrepresented through the use of its sign noted above that the automobile was covered by a warranty.

The trial court ruled that, as the sign did not indicate what the used car dealer was warranting, it would construe it as an invitation to do business. It found the first count to be moot because the plaintiff had subsequently received the certificate of title. As to the second count, the trial court found the defendant was relieved of any further responsibility because the plaintiff did the wrong thing in having the third party install the replacement engine. The trial court stated there was no testimony from the party who replaced the engine and the court did not know if it had to be replaced.

The dispositive issue on appeal is whether the trial court correctly granted the defendant's motion for a directed verdict.

On an appeal from a directed verdict, this Court will view the facts in the light most favorable to the plaintiff. *Kieft v Barr,* 391 Mich 77, 79; 214 NW2d 838 (1974).

We agree with the trial court that the first count of the complaint dealing with the transfer of the certificate of title is now moot.

As to the second count, the plaintiff's vehicle was covered by an implied warranty in the instant case. Unless otherwise excluded, it is implied in the contract for the sale of goods, where the seller is a merchant in respect to goods of that kind, that the goods will be merchantable, or "are fit for the ordinary purposes for which such goods are used". MCLA 440.2314; MSA 19.2314. An implied warranty of merchantability may be excluded by language that is a part of the contract which mentions merchantability in writing that is conspicuous or by other language "which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there

is no implied warranty." MCLA 440.2316(2), (3)(a); MSA 19.2316(2), (3)(a). In the present case, the language on the reverse side of the purchase agreement was not sufficient to exclude an implied warranty of merchantability. Thus, the vehicle was covered by such a warranty.

It should also be noted that an implied warranty, as here, is breached when tender of delivery is made and does not extend to later performance of the goods unless this is expressly provided for. MCLA 440.2725(2); MSA 19.2725(2). No such provision was made herein.

The trial court ruled that the defendant was relieved of further responsibility because the plaintiff had the replacement engine installed. This action by the plaintiff in the present case relates to the damage issue, not to whether he was able to establish a claim to relief by his proofs.

The measure of damages for breach of warranty is set forth in MCLA 440.2714(2); MSA 19.2714(2):

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Incidental and consequential damages may also be recovered. MCLA 440.2714(3); MSA 19.2714(3).

In viewing the facts in the light most favorable to the plaintiff, it appears the implied warranty of merchantability was breached when the plaintiff received the automobile from the defendant. The brief initial period when the plaintiff drove the car a few blocks and had to return to get the windshield wipers and brake lights repaired will not operate to his detriment. The testimony of the

plaintiff clearly indicates the engine was not operating properly when he next drove away from the defendant's lot. His testimony also indicates that within one week he was able to observe the "busted and bent push rods". Absent another explanation, it is a reasonable inference that the engine was in this condition when the plaintiff received delivery of the car from the defendant. There is also testimony that the manager at the defendant's lot stated that the engine would have to be replaced. Receipts were admitted into evidence indicating the cost of such replacement. The trial court thus had evidence before it from which it could find a breach of an implied warranty and the amount of damages that flowed therefrom. Any further damages would be a matter for the trial court to determine based upon the evidence. Nevertheless, in view of the above, it was error for the trial court to grant the defendant's motion for a directed verdict.

The plaintiff's third count deals with the defendant's sign, which read: "Colonial Dodge USED CARS 1 YEAR WARRANTY." No terms are evident to indicate what was intended to be covered by this warranty. In fact, there is no express warranty. Rather, there is a misrepresentation to the buyer that there is a warranty. Thus, the buyer's remedy is not to be based upon an affirmation of fact where none exists, MCLA 440.2313; MSA 19.2313, but upon misrepresentation, MCLA 440.2721; MSA 19.2721.

The trial court did not rule on the misrepresentation claim. This was error. In granting the defendant's motion for directed verdict, the trial court sitting without a jury was required to set forth its findings of fact and conclusions of law. GCR 1963, 504.2 and 517.1. The normal disposition

of the case on appeal where the trial court has failed to make the required findings would be to reverse and remand to the trial court so that it could make the determinations. See *e.g., Cook v Weinberger Builders, Inc,* 19 Mich App 475, 478; 172 NW2d 876 (1969). However, the disposition of this case on the implied warranty issue makes such action unnecessary.

Reversed and remanded for a new trial. Costs to the plaintiff.

M. J. KELLY, P. J., concurred.

V. J. BRENNAN, J. *(concurring in part, dissenting in part).* I would concur in the result the majority reaches on the first and second counts plaintiff asserts. However, my opinion differs from the majority on the third count regarding the existence of an express warranty, and so I feel some comment is in order.

Plaintiff contends that the trial judge erred when he held that the sign which read "USED CARS 1 YEAR WARRANTY" did not create an express warranty. The applicable section of the Uniform Commercial Code, MCLA 440.2313; MSA 19.2313, provides:

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

Defendant contends that there was no evidence that plaintiff relied on the sign to his detriment. The record shows that plaintiff did take note of the

sign on his first visit to defendant's premises, but there was no discussion about warranty during the negotiations. The question is, therefore, whether under these facts, the sign became "part of the basis of the bargain" so as to create an express warranty.

It should be noted that the predecessor to this section of the Uniform Commercial Code, § 12 of the Uniform Sales Act, CL 1948, § 440.12; MSA 19.252, provided:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon."

While it is apparent that the Uniform Commercial Code does not expressly provide for reliance on the part of the purchaser as did the Uniform Sales Act, it has been argued that the "basis of the bargain" test is equivalent thereto, and effects little change in Michigan law. Comment, *The Contractual Aspect of Consumer Protection: Recent Developments in the Law of Sales Warranties,* 64 Mich L Rev 1430, 1433. It must be observed, however, that the Official UCC Comment ¶ 3, regarding MCLA 440.2313, states:

"In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact."

While it is no doubt true that a statement ordinar-

ily amounting to a warranty cannot be a part of the "basis of the bargain" if the plaintiff is totally unaware of the statement, *Kepling v Schlueter Mfg Co,* 378 F2d 5, 7 (CA 6, 1967), the record in the instant case clearly shows that plaintiff was aware of the statement on defendant's sign. Since I can find nothing in this record which a trial court could reasonably construe as being clear affirmative proof of any fact which would take such a statement out of the agreement, I would hold that the statement on defendant's sign, "USED CARS 1 YEAR WARRANTY" did become a part of the "basis of the bargain" and was therefore an express warranty under MCLA 440.2313; MSA 19.2313. See *Hawkins Construction Co v Matthews Co, Inc,* 190 Neb 546; 209 NW2d 643 (1973).

The trial judge was concerned about the meaning of the sign on defendant's premises. He apparently reasoned that since warranties come in different shapes and sizes, and since the sign did not specify what was warranted, and on what specific terms, he could only construe the sign as an invitation to do business. I must disagree with the learned trial judge. In the law of contracts any ambiguity in a written contract is construed against the draftsman. In the case at bar, defendant made a statement on a sign which was ambiguous, and which was not clarified during the negotiations for the sale of the used automobile. I do not think it fair that defendant profit from any ambiguity in the statement. Rather, I think that defendant should be held to a construction which a purchaser of a used automobile would reasonably hold. I hold, therefore, that the statement, "USED CARS 1 YEAR WARRANTY", absent explanations to the purchaser clearly indicating otherwise,

means that the seller warrants that used automobiles which he sells will be suitable for transportation under normal use for a period of one year. I note that defendant in this case offered to repair plaintiff's car for a 25% discount on parts and labor. While defendant may have intended to clarify the meaning of his warranty, his failure to inform the purchaser prior to the purchase that those were the terms of his warranty rendered such statements ineffective for that purpose. If a purchaser is not informed otherwise, I think that the purchaser of a used automobile under a "warranty" which specifies a particular length of time should be able reasonably to rely on a belief that seller warrants that the automobile will function effectively as transportation for the stated period or that defects therein which render the automobile inoperative will be repaired at seller's cost.

It must next be determined whether the seller effectively disclaimed the warranty by the language on the reverse side of the purchase order agreement. MCLA 440.2316; MSA 19.2316 provides:

"(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this article on parol or extrinsic evidence (section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable."

In the case at bar defendant used clear words to create an express warranty. Defendant also used clear words in uniform small print on the reverse side of the purchase order agreement to disclaim that warranty. Since there is no reasonable con-

struction by which these terms may be understood as consistent with each other, I hold that the words of negation or limitation were inoperative.

I concur in the measure of damages the majority would employ.