Howard PERRY, Appellee,

v.

LAWSON FORD TRACTOR CO. and Ford Motor Company, Appellants.

No. 50597.

Supreme Court of Oklahoma.

June 17, 1980.

A.. Carl Robinson, Muskogee, for appellant Lawson Ford Tractor Co.

Boesche, McDermott & Eskridge, by Lance Stockwell and Marilyn Adamson, Tulsa, for appellant Ford Motor Co.

Pearson and Green, by Bruce Green, Muskogee, for appellee.

OPALA, Justice.

This appeal deals with the sufficiency of evidence to sustain a claim for breach of warranty and with the correctness of instructions on the measure of damages. The specific questions presented are: [1] Did the trial court err in instructing that the buyer had a claim for breach of implied warranty? [2] May warranty be implied from a sale of used equipment? [3] Did buyer's examination of the machine [combine] operate to exclude the implied warranty of merchantability? [4] Was the evidence sufficient to sustain a claim as to the machine's unfitness for its intended purpose? [5] Did the trial court err in failing to instruct on the effect of a disclaimer clause in the express warranty? [6] Did the evidence show that the injury to the crops was legally recoverable because it proximately resulted from breach of warranty? [7] Was there error in instructing the jury on the measure of damages for breach of express and implied warranties? and [8] Did the trial court err in its instruction on consequential damages?

We hold: [1] Since the evidence was in conflict on the issue of whether buyer actually received the express warranty on the combine, there was no error in instructing on both implied and express warranties. [2] Unless it is expressly disclaimed, warranty may be implied from the sale of used equipment. [3] The evidence here did not reflect that buyer's pre-sale examination of the combine operated, as a matter of law, to exclude from the transaction an implied warranty of merchantability. [4] The evidence was sufficient to submit, as an issue for the jury, the combine's merchantability or fitness for its intended purpose. [5] The jury was improperly instructed on the measure of damages for breach of implied

warranty. [6] The evidence was not sufficient for determination of damages to the crops or to the combine. [7] The trial court should have instructed on the theory advanced and evidentially supported by the seller that buyer was barred from recovery based on implied warranty because of the disclaimer clause contained in the express warranty.

Plaintiff [buyer] purchased a combine from a local dealer [seller].[1] Inside the equipment seller placed an operator's manual. The third page of the manual included an express warranty from both the manufacturer and dealer which [1] limits buyer's remedy to the cost of repair and replacement of defective parts and excludes recovery of consequential damages and [2] expressly disclaims any other express or implied warranties of merchantability and fitness. During the first few months after purchase, buyer experienced numerous breakdowns in the machine. Some of the problems the seller was successful in remedying temporarily. Because of the breakdowns buyer claimed to have lost several crops that year. Buyer's suit against the dealer and manufacturer was based on (a) fraud and misrepresentation in the sale of the combine and (b) on breach of express and implied warranties. The petition declared upon two causes of action. At trial buyer's fraud claim failed when the trial court sustained a demurrer to the evidence. The claim for breach of implied warranty resulted in a verdict for the buyer. It awarded him $10,500 for damages to the combine and $20,212 in consequential damages for lost crops. Dealer and manufacturer bring joint appeal.

I

THE SCOPE OF IMPLIED–WARRANTY CLAIM

■ According to the seller's position, the buyer's right of recovery is limited to the terms of the express warranty given at the

---

1. Manufacturer and dealer are referred to jointly as "seller" and individually as "manufacturer" and "dealer".

time of sale. Since that warranty contained a disclaimer of all implied warranties, it is the seller's view that there was error in instructing on implied warranty. The dealer testified that at the time of sale the buyer was furnished an operator's manual for the equipment bought. It contained a copy of the warranty (usually printed at the third and fourth pages). The buyer related that some pages were in fact missing or torn out from his copy—the lost pages being apparently those which comprised the warranty—and that he did not recall ever seeing a copy of the printed warranty. In short, the evidence does not establish as undisputed fact that the buyer did receive a copy of the express warranty. There was hence no error in instructing with respect to both express and implied warranties.

We next deal with seller's contention that no warranty of merchantability may be implied from the sale of used goods. Seller relies on pre-Code case law[2] and on the terms of § 1–103.[3] That code section provides that "unless displaced by the particular provisions of this Act" the principles of pre-existing law would supplement the Code provisions. We find this argument unpersuasive.

■ In their application to warranties implied from sale, code provisions make no distinction between new and used goods. According to § 2–314, when the sale is by one who is a merchant dealing in the kind of goods that are sold, the Code neither exempts the transaction from, nor modifies, the warranty. It is to be implied as a contract term.[4] UCC comments clearly reflect a warranty of merchantability may be implied in a sale of used goods.[5] The overwhelming weight of authority supports this view.[6] Courts which departed from the majority position were persuaded to do so by continued recognition in the respective jurisdiction of pre-Code law which had negated the implication of warranty in a used-goods transaction or by some special circumstances in the case.[7] We decline to follow the minority view—persuaded as we are—that all contrary pre-existing Oklahoma law has been replaced by the Code.

2. *Wat Henry Pontiac Co. v. Bradley*, 202 Okl. 82, 210 P.2d 348 [1949]; *Henry v. Kennard*, 178 Okl. 368, 62 P.2d 1184 [1936]; *Tibbets & Pleasants, Inc. v. Town of Fairfax*, 145 Okl. 211, 292 P. 9 [1930].

3. 12A O.S.1971 § 1–103 of the Uniform Commercial Code; all section references in the text are to 12A O.S.

4. A "sale" is defined as "the passing of title from the seller to the buyer for a price." § 2–106(1). A "merchant" is a "person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed . . ." § 2–104(1). "Goods" means all things "which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities and things in action." § 2–105(1).

5. § 2–314, UCC Comments 3 and 4.

6. *Mack Trucks of Ark., Inc. v. Jet Asphalt & Rock Co.*, 246 Ark. 101, 437 S.W.2d 459 [1969]; *Moore v. Burt Chevrolet, Inc.*, 39 Colo.App. 11, 563 P.2d 369 [1977]; *Georgia Timberlands, Inc. v. Southern Airways Co.*, 125 Ga.App. 404, 188 S.E.2d 108 [1972]; *Stamm v. Wilder Travel Trailers*, 44 Ill.App.3d 530, 3 Ill.Dec. 215, 358 N.E.2d 382 [1976]; *Overland Bond & Inv. Corp. v. Howard*, 9 Ill.App.3d 348, 292 N.E.2d 168 [1972]; *Centennial Ins. Co. of N.Y. v. Vic Tanny Int'l., Inc.*, 46 Ohio App.2d 137, 346 N.E.2d 330 [1975]; *Rose v. Epley Motor Sales*, 288 N.C. 53, 215 S.E.2d 573 [1975]; *Turner v. International Harvester Co.*, 133 N.J.Super. 277, 336 A.2d 62 [1975]; *Buff v. Giglio*, 124 N.J.Super. 94, 304 A.2d 771 [1973]; *Stream v. Sportscar Salon, Ltd.*, 397 N.Y.S.2d 677, 91 Misc.2d 99 [1977]; *Regan Purchase & Sales Corp. v. Primavera*, 328 N.Y.S.2d 490, 68 Misc.2d 858 [1972]; *Houck v. DeBonis*, 38 Md.App. 85, 379 A.2d 765 [1977]; *Mangieri v. Admiral Pontiac, Inc.*, 14 U.C.C. Rep. 82 [Md.Cir.Ct.1974]; *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 333 N.E.2d 202 [1975]; *Johnson v. Fore River Motors, Inc.*, 26 Mass.App.Dec. 184 [1967]; *Hensley v. Colonial Dodge, Inc.*, 69 Mich.App. 597, 245 N.W.2d 142 [1976]; *Tracy v. Vinton Motors, Inc.*, 130 Vt. 512, 296 A.2d 269 [1952]; *Testo v. Russ Dunmire Oldsmobile, Inc.*, 16 Wash.App. 39, 554 P.2d 349 [1976]; *Baker v. City of Seattle*, 79 Wash.2d 198, 484 P.2d 405 [1971].

7. *Chaq Oil Co. v. Gardner Machinery Corp.*, 500 S.W.2d 877 [Tex.App.1973]; *Trax, Inc. v. Tidmore*, 331 So.2d 275, 277 [Ala.1976]; *Robinson v. Branch Moving & Storage Co., Inc.*, 28 N.C.App. 244, 221 S.E.2d 81 [1976].

■ We hold that the provisions of § 2–314(1) were clearly intended to apply to *all sales* of goods by a merchant who deals in them (or similar goods), unless the parties by agreement specifically exclude or modify the legally-imposed warranty of merchantability. The Code simply does not authorize the exception of used goods from the purview of implied warranty of merchantability. To do otherwise would contradict its provisions.[8]

Seller also contends that warranty may not be implied from the combine sale because buyer had inspected and operated it before purchase. The post-sale defects, it is urged, are chiefly those discovered and corrected before the sale. They cannot now be considered latent in character. Buyer counters that the evidence is conflicting with respect to whether the purchase occurred before or after the inspection.

■ The terms of § 2–316(3)(b) exclude from implied warranty of merchantability defects which pre-sale examination should have revealed to buyer.[9] In this case evidence identifies numerous defects which were noticed by the buyer before he took possession of the equipment and during its trial use. These defects, which seller promised to remove, were in fact temporarily remedied. After the sale the buyer experienced more problems with the same parts and some malfunction of other parts. There is nothing in the evidence which would compel a finding that the defects, which eventually rendered the combine inoperable and unacceptable, should have been discovered by a buyer, unskilled in

mechanics, through normal use of short duration and casual inspection. The record is sufficient to sustain a finding, implicit in the verdict, that the buyer's examination could not have revealed the equipment purchased to be unfit for its intended purpose.[10]

Seller next contends the evidence was insufficient to support a verdict bottomed on breach of implied warranty.

■ Under 12A O.S.1971 § 2–314(2) goods are merchantable when, at the least, they are fit for the ordinary purposes for which they are used. Merchantability is a flexible concept based on the circumstances of the sale and dependent on the description of the goods.[11] It does not connote best quality or perfection in detail.[12] But it does require, at the very least, that goods operate for their ordinary purpose. This is not to say there cannot be problems or breakdowns with a merchantable machine. But a breakdown upon almost every occurrence of use is incompatible with conformity to merchantable standards. The record amply supports a finding of breached warranty implied from the sale.

## II

### ERROR IN INSTRUCTING ON AND SUBMITTING THE ISSUE OF DAMAGES

■ Seller asserts several errors in the trial court's instruction on consequential damages. Its first complaint is that the instruction was improper since the express warranty excluded liability for consequen-

---

8. Edward M. Kimmel, Used Goods and Merchantability, 13 Tulsa L.J. 627 [1978].

9. At what point a buyer enters into the contract is unclear and perhaps the exact moment is unnecessary to pinpoint as it appears the purpose of this section is served if he examines or uses the goods anytime before the deal is closed or before acceptance and payment of the purchase price. The terms of § 1–201(11) define "contract" as the "total legal obligation which results from the parties' agreement as affected by this Act and any other applicable rules of law." There are no reported cases dealing with exactly when an examination by the buyer must occur to exclude the implied

warranties and interpreting "before entering the contract." But in our case, it seems clear that this use and examination by the buyer before payment was early enough in the sale to warn him of obvious defects, if any, with the combine.

10. *Davis v. Pumpco Inc.*, Okl.App., 519 P.2d 557 [1974] (examination found to exclude implied warranties).

11. § 2–314, UCC Comment No. 3.

12. *Levy v. O'Neill*, 27 U.C.C. Rep. 692 [Mass. Dist.Ct.App.Div. 1979].

tial damages. This argument is untenable because the evidence was in dispute with respect to the buyer's receipt of a printed text of the warranty.

■■■ Seller next argues there is no evidence to show the crops were lost as a result of breached warranty. According to the record, a bearing went out shortly after buyer began harvesting his milo crop. The machine was inoperable while he was waiting for delivery of the spare part. Once the combine was fixed, heavy rains prevented the buyer from immediately re-entering the field. Birds then destroyed the milo crop before it could be harvested. Buyer also experienced difficulty with the combine when harvesting his soybean crop. After attempting to repair the machine, rains once again prevented him from entering the field before he lost the soybean crop. Seller advances the argument that unseasonable rains were an "independent, unforeseeable and distinct agency" which interacted with a malfunctioning combine to produce the losses. We cannot agree with seller's position. During harvesting time farmers are constantly faced with the possibility that bad weather conditions may cause damage to their crops. It is of utmost importance that harvesting equipment be at all times in working condition during this critical period. The evidence was hence legally sufficient to support the instruction on damages "proximately caused" by breached warranty.[13]

■■■ Seller's final complaint of vice in submission of damages is that there was no sufficient basis in evidence for jury's determination of consequential damages for lost crops. With this argument we agree. The record reflects the buyer testified as to the probable gross value of the crops he lost, but there is nothing on the fair-market cost of harvesting, transporting and other incidental expenses. The net amount of loss is hence left to conjecture.[14] Consequential damages may be awarded for loss resulting from general or particular requirements of the buyer which are reasonably known to seller at the time of purchase.[15] The UCC comments to § 2–715(2) emphasize a liberal view with respect to the administration of these remedies. Mathematical precision is not required.[16] In pre-Code cases, we have employed a reasonable formula for determination of lost-crop value. Since the Code does not specify a different measure, we hold that our prior formula supplements the Code and may be used in submitting the issue of consequential damages for lost crops.

■■■ We also agree with seller's contention that the trial court failed properly to instruct the jury on the measure of damages from a breached warranty of merchantability and that the evidence was insufficient upon which to base a verdict for such damages. The jury was instructed that if it found the seller had violated either the express or implied warranty of merchantability, the verdict should be for the buyer but may not exceed $10,500.

**13.** The element of foreseeability circumscribes the outer limit of damages recoverable both *ex contractu* and *ex delicto*. It is risk reasonably to be anticipated from the breach of an obligation. Occurrence of crop loss—while equipment designed and sold for use in harvesting remains disabled and repairs diligently made come too late for meaningful deployment of the machine in the field—certainly is an event that flows naturally from the breach of implied warranty of fitness. It is a loss well within the contemplation, and hence within the sweep, of the warrantor's assumed liability. *Eason Oil Co. v. Whiteside*, 175 Okl. 254, 52 P.2d 35, 37–38 [1935]; *Home-Stake Production Company v. Minnis*, Okl., 443 P.2d 91, 101 [1968]; *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Reprint 145 [1854]; *Brodsky v. Atchison, Tope-*

*ka & Santa Fe Railway Co.*, Okl., 368 P.2d 852, 855 [1962]. Since the question is not before us we do not decide here whether foreseeability of damage from breach of warranty is to be tested by the notions of recovery limits traditionally applied in tort or in contract law. *Cf. Moss v. Polyco, Inc.*, Okl., 522 P.2d 622, 627 [1974].

**14.** *Cities Service Gas Co. v. Christian*, Okl., 340 P.2d 929, 936–937 [1959]; *Shannon v. Bridges*, 196 Okl. 481, 165 P.2d 976 [1946]; *City of Okmulgee v. Wall*, 193 Okl. 333, 144 P.2d 103 [1944]; *Bowles v. Brown*, 187 Okl. 264, 102 P.2d 837 [1940].

**15.** § 2–715(2).

**16.** § 2–715, UCC Comment No. 4.

The proper measure of damages is found in § 2–714(2) and the charge given should have identified it as the difference—at the time and place of acceptance—between the actual value of the combine accepted and that which it would have had if it had been as warranted.[17]

■ The only evidence available to the jury was the combine's actual purchase price of $10,500 in February 1974, a statement from the dealer that he could have sold it to someone else for $5,000 more and buyer's testimony of the combine's negative value in December 1974 when it remained inoperable. The first figure may be relevant as to the warranted value at the time of acceptance, but the evidence as a whole is insufficient for the jury to apply the "difference-in-value" formula of damages.[18]

## III

### DEFENSE OF DISCLAIMER

■ Seller's principal complaint is that the court erred in failing to give a requested instruction on the main theory of defense and in charging, instead, upon the buyer's theory of an implied-warranty claim. We are urged that error is to be deemed reversible when the court fails or refuses, as it did here, to instruct the jury upon a vital issue or theory of defense which is supported by the evidence.[19] Seller's objection to the express-warranty instruction is that it failed to inform the jury of the existence and the legal effect of the disclaimer in the text of express warranty by which seller claims to be relieved of liability for breach of implied warranty. We agree with this contention because the seller's complaint goes to the very crux of defense theory.

Since the case must be retried for the reasons stated earlier in this opinion, it suffices to say here the jury should have been instructed that if they found the warranty printed in the manual had reached the hands of the buyer—when the combine was sold—and he had ample opportunity to gain knowledge of its contents from a conspicuous text,[20] the disclaimer clause in the warranty so received operated to bar buyer's claim for breach of an implied warranty.

**JUDGMENT REVERSED AND CAUSE REMANDED FOR NEW TRIAL.[21]**

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, BARNES, SIMMS and HARGRAVE, JJ., concurring.

**17.** Seller does not contend in the briefs that buyer's recovery for breach of express warranty should have been confined to the value of repair and replacement. We hence do not reach here that issue. For an explanation of warrantee's right to expanded recovery (beyond repair and replacement) see our discussion in *Osburn v. Bendix Home Systems*, decided June 3, 1980, Okl., 613 P.2d 445.

**18.** *D & H Co., Inc. v. Shultz*, Okl., 579 P.2d 821, 822–823 [1978].

**19.** *Hatcher v. Morris*, Okl., 441 P.2d 462, 465 [1968]; *Peoples Bank of Aurora v. Haar*, Okl., 421 P.2d 817, 821 [1966]; *Bradley Chevrolet, Inc., v. Goodson*, Okl., 450 P.2d 500 [1969].

**20.** This is so unless the disclaimer provisions are successfully attacked as not encompassing UCC safeguards. The validity of the disclaimer was not assailed here. UCC Comments 3 and 4 of § 2–316 provide: "3. Disclaimer of the implied warranty of merchantability is permitted under subsection (2) but with the safeguard that such disclaimers must mention merchantability and in case of a writing must be conspicuous. 4. Unlike the implied warranty of merchantability, implied warranties of fitness for a particular purpose may be excluded by general language, but only if it is in writing and conspicuous."

**21.** The issue of damages cannot be separated here from that of liability. We must hence remand the case for a complete retrial of all issues. *Halford v. Schumacher*, Okl., 323 P.2d 989, 991 [1958].