710 P.2d 621

**Dan C. DICKERSON, Plaintiff-Respondent,**

v.

**MOUNTAIN VIEW EQUIPMENT COMPANY, Defendant-Appellant.**

No. 15696.

Court of Appeals of Idaho.

Nov. 20, 1985.

---

Kenneth O. Kreis, Boise, for defendant-appellant.

Gerald Weston (Gigray, Miller, Downen & Weston), Caldwell, for plaintiff-respondent.

WALTERS, Chief Judge.

Dan Dickerson brought a small claims action against Mountain View Equipment Company for the cost of repairing a used tractor previously purchased from the company. The magistrate in the small claims department entered judgment for Dickerson and Mountain View appealed to the district court. After a de novo trial, the district court found that Mountain View had breached two warranties: an implied warranty of merchantability and an implied warranty of fitness for a particular purpose, I.C. §§ 28–2–314, –315. The district court awarded judgment to Dickerson and denied a motion by Mountain View for a new trial. On appeal to this Court, Mountain View argues that no implied warranties existed; that there was insufficient evidence to establish breach of the implied warranties; and an expressed warranty between the parties superceded any implied warranty of merchantability. For the reasons stated below, we affirm the judgment of the district court.

The events which led to this action are undisputed. In the spring of 1982, Dickerson advised Mountain View that he needed to purchase a tractor for the spring planting season which was from April 1 to May

15. He was shown two tractors with their engines, transmissions, and axles completely disassembled in the company's shop. The company assured Dickerson the tractors would be totally rebuilt. Dickerson paid $13,850 for one of the rebuilt tractors. He received a trade-in credit of $6,725 on his old tractor and paid the balance of $7,125. When he purchased the tractor, Dickerson received a "Used Equipment Warranty." This warranty indicated the tractor was sold under a "Mountain View Warranty." The Mountain View Warranty stated:

> Machinery sold in this category will include a warranty of operation, service work and parts performance ... for 30 days from use date and all repairs will be based 50–50 (customer to pay 50% of repair bill and Mountain View Equipment to pay 50% of repair bill). If the machine has a completely rebuilt engine or gearbox, the warranty will be 100% on these specified components for 90 days from use date.

Dickerson and the company agreed to modify the warranty. The modified warranty provided: "Transmission & Differential to have a 90 day full warranty. MVE to put a 100% full warranty for 30 days from date of delivery on major problems."

Mountain View delivered the tractor to Dickerson's farm on May 7, 1982. After Dickerson started the tractor and drove less than 200 feet, the tractor "jumped out of gear." Dickerson called the company and Mountain View returned the tractor to the shop on the same day. The company loaned Dickerson another tractor but he testified it was too small to pull any of his heavy planting equipment. He borrowed and rented tractors during the week his tractor was being repaired. Using the borrowed and rented tractors, Dickerson completed his spring planting. After Mountain View had repaired a gear in the transmission, the tractor was returned to Dickerson. Dickerson fueled the tractor and attached a piece of field equipment, but the tractor's hydraulic power director would not function. Mountain View attempted to fix the tractor in the field but eventually had to take it back to the shop. The tractor was again repaired and returned to Dickerson. He operated the tractor for approximately ten hours following the spring season. After the tractor had been repaired the second time, Dickerson noted several problems in the tractor's steering, throttle, right brake, and door. The engine was also leaking oil. While still within the warranty period, Mountain View and Dickerson agreed that the company would complete the necessary repairs after the fall harvesting season. Dickerson used the tractor for approximately 190 hours in the fall. He used the tractor in fifth and sixth gear (light load situations) to pull a light twelve-foot disc. The agreed warranty work was accomplished in January of 1983.

Dickerson next used the tractor during spring planting in late April 1983. The spring work was the most demanding on the tractor. Dickerson used the tractor's third and fourth gears (heavy load situations) to pull a twenty-four foot cultivator. He made two passes pulling the cultivator, and the tractor broke down. Again, Mountain View picked up the tractor and discovered that two teeth were sheared off from the third gear wheel. Although the previous repairs had been done by Mountain View under warranty, this time the company charged Dickerson $1,732.29 before releasing the tractor. He paid the charge and then instituted the small claims action to recover this amount.

The district court found Mountain View's "Used Equipment Warranty" was an express warranty which attempted to disclaim any implied warranties. The court determined the disclaimer was ineffective.[1] The court held the tractor was not merchantable; thus, Mountain View had breached an implied warranty of merchantability, I.C. § 28–2–314. The district court

---

1. The district court found that the disclaimer did not mention "merchantability" and was not conspicous on the Used Equipment Warranty.

*See* I.C. § 28–2–316(2). This issue has not been appealed so we will not address it.

found that the gear was "more probably than not" defective at the time of sale and the string of breakdowns amply supported the finding that the company had breached its implied warranty of merchantability.[2]

In a warranty cause of action, the burden is on the plaintiff to show the existence of a particular warranty, that the warranty was breached, and that damage was proximately caused by the alleged breach. *See Verbillis v. Dependable Appliance Co.*, 107 Idaho 335, 689 P.2d 227 (Ct.App.1984); *Duff v. Bonner Building Supply, Inc.*, 103 Idaho 432, 649 P.2d 391 (Ct.App.1982), *aff'd*, 105 Idaho 123, 666 P.2d 650 (1983); I.C. § 28–2–314, Official Comment 12. More specifically, to recover for the breach of an implied warranty of merchantability, the plaintiff must prove: (1) the goods purchased were subject to an implied warranty of merchantability; (2) the goods did not comply with the warranty at the time of delivery; (3) the purchaser's damages were due to the unmerchantable nature of the goods; and (4) damages were suffered as a result of the breach of the warranty. *Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E.2d 651 (1980); *Duff*, 103 Idaho at 434–35, 649 P.2d at 393–94. Mountain View asserts the tractor was not subject to an implied warranty of merchantability for two reasons. First, the company suggests that any implied warranty of merchantability was limited or nonexistent because the tractor was sold as used equipment. Second, any warranty of merchantability had been superceded by the company's express warranty. Finally, the company asserts that if an implied warranty did exist, Dickerson failed to show the tractor was unmerchantable at the time of delivery. We will address these issues in turn.

I

Idaho Code section 28–2–314 provides that, unless excluded or modified, a warranty of merchantability is implied in a sale of goods if the seller is a merchant in that kind of goods. *Duff*, 103 Idaho at 434, 649 P.2d at 393. As we have indicated, the disclaimer was ineffective in excluding any implied warranties. An implied warranty of merchantability does not arise from any agreement between the parties, but is imposed by operation of law. It is independent of any express warranty. *Professional Lens Plan, Inc. v. Polaris Leasing Corp.*, 234 Kan. 742, 675 P.2d 887 (1984); *Ontai v. Straub Clinic and Hospital, Inc.*, 66 Haw. 237, 659 P.2d 734 (1983); *Perfetti v. McGhan Medical*, 99 N.M. 645, 662 P.2d 646, *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983). Although the Commercial Code does not define merchantability, section 28–2–314 sets minimum standards for merchantability. "Goods to be merchantable must be *at least* such as (a) pass without objection in the trade under the contract description; and ... (c) are fit for the ordinary purposes for which such goods are used." I.C. § 28–2–314 (emphasis added); *Duff*, 103 Idaho at 434, 649 P.2d at 393; *Consolidated Supply Co. v. Babbitt*, 96 Idaho 636, 534 P.2d 466 (1975). The implied warranty of merchantability is not intended to guarantee that the goods be the best or of the highest quality—the standard is measured by the generally acceptable quality under the description used in the contract. *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592 (Okla. 1981); I.C. § 28–2–314, Official Comment 2.

Mountain View suggests that an implied warranty of merchantability was limited or nonexistent because the tractor was a used piece of equipment. Although at least one jurisdiction does not extend the implied warranty of merchantability to used goods, *Southerland v. Northeast Datsun, Inc.*, 659 S.W.2d 889 (Tex.App. 1983), we note the majority of jurisdictions extend the warranty to used goods. *Perry v. Lawson Ford Tractor Co.*, 613 P.2d 458, 462 nn. 5, 6 (Okla.1980) and cases cited therein; Note, *Sales: Extensions of Im-*

---

**2.** Because we find the breach of an implied warranty of merchantability to be dispositive, it is unnecessary to discuss the district court's alternative finding of an implied warranty of fitness for a particular purpose, I.C. § 28–2–315.

*plied Warranty of Merchantability to Used Goods,* 46 Mo.L.Rev. 249, 250 (1981); Stasney, *UCC Implied Warranty of Merchantability and Used Goods,* 26 Baylor L.Rev. 630, 637 (1974). The Code does not limit the merchantability warranty to new goods. *Crandell v. Larkin and Jones Appliance Co.,* 334 N.W.2d 31 (S.D.1983); *International Petroleum Services, Inc. v. S & N Well Service, Inc.,* 230 Kan. 452, 639 P.2d 29 (1982). " 'Goods'. means *all* things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale." I.C. § 28–2–105(1) (emphasis added). Official Comment 3 to section 28–2–314 indicates that the sale of second-hand goods is encompassed by the implied warranty of merchantability. We hold that the implied warranty of merchantability recognized in section 28–2–314 applies to transactions of both new and used goods. *Testo v. Russ Dunmire Oldsmobile, Inc.,* 16 Wash.App. 39, 554 P.2d 349 (1976).

One distinction between new and used goods goes to the standard of merchantability applied to such goods. Generally, goods are merchantable when, at the least, they are fit for the ordinary purposes for which they are used. I.C. § 28–2–314. "Merchantability is a flexible concept based on the circumstances of the sale and dependent on the description of the goods." *Perry,* 613 P.2d at 463. As Official Comment 3 to section 28–2–314 recognizes, "A contract for the sale of second-hand goods, however, involves only such obligations [of merchantability] as is appropriate to such goods for that is their contract description." *See Fuquay v. Revels Motors, Inc.,* 389 So.2d 1238 (Fla.Ct.App.1980); *Testo,* 554 P.2d at 354. Therefore, the new or used character of the tractor is a factor in determining its standard of merchantability. In addition, "[t]he buyer's knowledge that the goods are used, the extent of their prior use, and whether the goods are significantly discounted may help determine what standards of quality should apply to the transaction." *International Petroleum Services,* 639 P.2d at 34. Merchantability is a part of the seller's obligation to

the purchaser. We will discuss the appropriate standard of merchantability particular to this case in section II.

Mountain View also asserts that the express warranty embodied in its Used Equipment Warranty supercedes any implied warranty of merchantability. The company agrees with the district court's finding that the ninety-day coverage of the used equipment warranty had expired when the tractor broke down in the spring of 1983. Accordingly, the company argues that the breakdown which constituted the alleged breach of the implied warranty occurred past the expiration of the ninety-day period. Mountain View directs our attention to I.C. § 28–2–317 which discusses the cumulative effect of multiple warranties. "Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominate.... Express warranties displace inconsistent implied warranties." I.C. § 28–2–317(c). Mountain View insists that the express warranty coverage for ninety days supercedes the implied warranty of merchantability and, consequently, any breakdown of the tractor past the ninety-day period under an implied warranty of merchantability is inconsistent and must fail. Mountain View argues that extending its obligation to repair the tractor beyond the ninety-day warranty period would be unreasonable and, thus, the express and cumulative warranties are in conflict. *Compare, e.g., Mountain Fuel Supply Co. v. Central Engineering & Equipment Co.,* 611 P.2d 863 (Wyo.1980) *and Morrison v. Devore Trucking, Inc.,* 68 Ohio App.2d 140, 428 N.E.2d 438 (1980).

We believe Mountain View misconstrues the cumulative effect of an implied warranty of merchantability and the express warranty. The implied warranty of merchantability relates to the condition of goods at the time of the delivery and does not extend into the future. "A breach of warranty occurs when tender of delivery

is made, except that where a warranty *explicitly* extends to future performance of the goods and discovery of the breach must await the time of such performance." I.C. § 28–2–725(2). For warranty coverage to extend to future performance, the warranty must be expressed. *Wright v. Cutler-Hammer, Inc.*, 358 So.2d 444 (Ala. 1978); *Wilson v. Massey-Ferguson, Inc.*, 21 Ill.App.3d 867, 315 N.E.2d 580 (1974); Annot., 93 A.L.R.3d 690, § 2 (1979); 67A AM.JUR.2d *Sales* § 700 (1985). Because the Used Equipment Warranty guaranteed the operation and parts performance of the transmission for a full ninety days, such express warranty is congruous with an implied warranty of merchantability. This analysis of the merchantability warranty is consistent with its second element of proof—that the goods were unmerchantable *at the time of delivery*. Mountain View's express warranty did not supercede its implied warranty of merchantability. *See Frazier v. Consolidated Equipment Sales, Inc.*, 64 Or.App. 833, 670 P.2d 153 (1983). We find the admonition of Professors White and Summers in this instance to be persuasive:

> For two reasons we believe that courts should exercise some restraint in ruling that multiple warranties are inconsistent. First, [28–]2–316 provides several devices for disclaiming warranties, and the comments to that section indicate a policy of preserving implied warranties unless the seller complies with the prescribed formal requirements. Second, in nearly all cases the seller drafts the sales agreement including the expressed warranty clause; in those cases it seems reasonable to place the burden of multiple warranties on the seller, since he had the opportunity to resolve any possible inconsistencies.

J. WHITE & R. SUMMERS, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE § 12–7 (2d ed. 1980) (hereinafter cited as WHITE & SUMMERS). We must now examine the standard of merchantability in this case and whether Mountain View breached this standard.

## II

In an action for breach of an implied warranty, the buyer has the burden of establishing the breach by a preponderance of the evidence. *See Martineau v. Walker*, 97 Idaho 246, 542 P.2d 1165 (1975); I.C. § 28–2–314, Official Comment 13. Whether Mountain View breached its implied warranty of merchantability was a question for the trier of fact. *Martineau*, 97 Idaho at 248, 542 P.2d at 1167. We have indicated in the past that the issue of nonconforming goods turns on the existence of a defect. *E.g., Verbillis v. Dependable Appliance Co.*, 107 Idaho at 337, 689 P.2d at 229. Although the existence of a defect normally supports the finding of a breach of an implied warranty of merchantability, WHITE & SUMMERS, § 9–7, at 351, such a requirement may unduly restrict the examination of a product's merchantability. A product may be nondefective and nonetheless be unmerchantable. *Id.* at § 9–6; 67A AM.JUR.2d *Sales* § 744 (1985). We believe the appropriate test for determining whether an implied warranty of merchantability has been breached, is to examine whether the goods were unmerchantable at the time of delivery.

## A

What standard of merchantability should be applied to the sale of this used tractor? Again, we resort to the description contained in the contract and those additional factors which may reveal the intent of the parties concerning any implied warranty of merchantability. Turning first to the contract, we note the sales contract between Dickerson and Mountain View identified the tractor as being used. Although used, the tractor was to be totally rebuilt before delivery to Dickerson. As previously indicated, Dickerson advised Mountain View that he needed a tractor for spring planting. Once the tractor was selected, Dickerson and the company agreed to an extension of the warranty period to cover the spring planting season. The company presented evidence that its nor-

mal policy in selling used equipment was to only provide a thirty-day warranty. The Used Equipment Warranty also provided that if "the machine has a *completely rebuilt engine or gearbox,* the warranty will be 100% on these specified components for 90 days from use date." (Emphasis added). Under the wording of this condition it is assumed that only a completely rebuilt gearbox would be provided with such a warranty. Mountain View's general manager testified: .

> We would want a customer to have a tractor that would do the job for him. And the purpose of having it in the shop and having the transmission torn apart was to repair what was ever needed to be done to the tractor to the best of our ability.
>
> [Question by Dickerson:] The fact that the transmission was completely out of the tractor at the time I bought it would indicate that you knew there were transmission problems; is that correct?
>
> [Answer:] At the time it was out in our shop and the transmission was torn apart, yes, there were problems. And we did replace whatever gear was necessary to make the tractor work or perform properly.
>
> [Question:] You replaced what was necessary to make it perform properly?
>
> [Answer:] Our standard practice is to look at the entire situation and replace whatever needs to be replaced to make the tractor function properly.

We now turn to the other factors to be considered in determining the appropriate standard of merchantability for the used tractor. The company presented evidence that a new tractor would cost approximately $40,000 in comparison to Dickerson's tractor purchased for $13,850. It is significant to note that, although Dickerson paid only 35% of a new tractor's cost, his tractor was to receive the full ninety-day warranty because of the rebuilt gearbox. Dickerson further testified that he agreed to the ninety-day warranty under the assumption that it would cover his initial use of the tractor during spring planting. He testified that

"if the tractor held up during the spring work, I'd be more than satisfied with the mechanical condition of the unit." The warranty period would have covered the tractor during its period of heaviest use. Because the tractor did not operate properly upon its initial delivery, Dickerson was denied the opportunity to test the tractor that first spring. Finally, the company's Used Equipment Warranty also contained two other warranty categories. The first indicated that the used equipment was sold "as is." The second category only guaranteed the used equipment the first time it was started in the field. Dickerson obviously received the most extensive used equipment warranty offered by the company. Since Dickerson received a full ninety-day warranty, it is reasonable to assume the tractor would meet a higher standard of merchantability than one sold under a thirty-day warranty.

**B**

■ Mountain View finally asserts that the evidence was not sufficient to find a breach of implied warranty of merchantability. The company advances several reasons for this position. First, it contends that Dickerson failed to show he did not misuse the tractor. As our Supreme Court indicated in *Chisholm v. J.R. Simplot Co.,* "A breach of warranty may not be found where the buyer's misuse of the product causes it to malfunction." 94 Idaho 628, 631, 495 P.2d 1113, 1116 (1972) (footnote omitted). In *Chisholm,* the seller provided evidence of the buyer's misuse. In the present case, the company provided no evidence that Dickerson had misused the tractor. Dickerson did admit in his closing argument that the "tractor was never abused." The company correctly points out that Dickerson's assertion that he did not misuse the tractor is not evidence, however, neither did the company demonstrate that Dickerson misused the tractor. Accordingly, we find no merit to this argument.

Secondly, and more importantly, Mountain View maintains that Dickerson failed

to prove that the tractor was unmerchantable at the time of delivery. The company presented evidence that the gear could have been broken by "dumping the clutch" which would have subjected the transmission to a heavy torque load. The company also presented testimony that the gear in question was pitted and had wear marks on the leading edges of the gear teeth. The shop foreman testified that pitting and wear marks appear on a gear over time depending on the amount of stress placed on the gear. The foreman opined that the pitting on this particular gear may have occurred after the gear had been in service for approximately 1,000 to 5,000 hours. Dickerson testified unrebutted that he had only used the tractor for a total of 200 hours, of which 190 hours were used pulling light implements in the tractor's fifth and sixth gear. Dickerson did not have an opportunity to test the tractor the first spring, and the 190 hours of fall work were not equivalent to the heavy work normally occurring with spring planting. Although the shop foreman testified that the pitting would not directly result in the shearing of the teeth, he did indicate that it was the company's normal custom to replace a pitted gear. Dickerson asserted that the gear in question should have been replaced when the tractor was originally reassembled prior to delivery. He maintains that the pitting and wear marks on the gear indicates the gear's unmerchantability and should have been replaced.

Although the company presented testimony that the teeth of the gear were not sheared when the tractor was rebuilt, the question still remains whether the pitted and worn condition of the gear supported the court's finding that the tractor was unmerchantable. Facts may be proved by circumstantial, as well as by positive or direct evidence. *American Fertilizer*, 635 P.2d at 595. The unmerchantability of a product may be inferred from circumstantial evidence. *Verbillis*, 107 Idaho at 335, 689 P.2d at 229. A judgment attacked for the insufficiency of the evidence will not be overturned if there is any competent and substantial evidence, albeit conflicting, to support the lower court's findings. *Pointner v. Johnson*, 107 Idaho 1014, 695 P.2d 399 (1985). Here, Mountain View's personnel estimated that pitting such as on the gear in question occurred with 1,000 to 5,000 hours of operation. Dickerson testified that he had only used the machine 200 hours. The company also presented testimony that a gear exhibiting wear marks and pitting such as the gear in question here should have been replaced when the tractor was originally rebuilt. As the Oklahoma Supreme Court found in *Perry*, "a breakdown upon almost every occurrence of use is incompatible with conformity to merchantable standards." 613 P.2d at 463.

We find that the record supports the district court's finding of a breach of an implied warranty of merchantability. Accordingly, we affirm the judgment of the district court. Costs to Dickerson. No attorney fees on appeal.

SWANSTROM, J., concurs.

BURNETT, J., concurs in the result.