PHIL JACOBS COMPANY, INC., Plaintiff-Appellant, v. MILDRED MIFFLIN, d/b/a THE GAIETY SHOP, Defendant-Appellee.

(No. 72-195; ▮▮▮▮▮▮▮▮▮)

Fifth District—October 8, 1974.

*Rehearing denied December 2, 1974.*

G. MORAN, P. J., took no part.

. William E. Aulgur, of Eldorado, for appellant.

Harris and Lambert, of Marion, for appellee.

PER CURIAM:

. The plaintiff, Phil Jacobs Co., sold dress goods to the defendant, Mildred Mifflin, doing business as the Gaiety Shop, for a period from 1967

to 1970. This suit was brought to recover the purchase price for goods delivered from July, 1969 to January, 1970, totaling $1,718.40. The sales procedure was as follows: plaintiff's sales representative, James Hybarger, went to the defendant's store four times a year. He took with him printed order forms filled in with style numbers of goods sold by the company. Hybarger testified that after consulting with defendant, unwanted items were crossed off and desired items not shown were added. Defendant would then sign the forms and Hybarger would send them to the plaintiff who would ship the goods over the succeeding 3 months. There were two orders in the time period involved in the dispute. The first, placed on August 6, 1969, for $736.75, was concluded by telephone. Mrs. Mifflin was not in her store when Mr. Hybarger appeared. He called her from St. Louis. Mr. Hybarger testified that he asked Mrs. Mifflin if he could "order what we had normally been ordering." She agreed, according to Mr. Hybarger. Mrs. Mifflin did not testify as to this transaction. It is evident, however, that she did not sign the order as was the usual custom and there is no evidence that she signed the final order form. The other transaction occurred on November 5, 1969, an order being placed for $952.20. There is some dispute about part of this order. The ordering procedure apparently d ffered as to one item of clothing—stretch pants. Mr. Hybarger testified that in order to further style, color and size continuity, specific quantities were not added to the form until he consulted his records of the customer's sales for previous years. Thus, quantities and total amounts were not included on the order form when it was signed by Mrs. Mifflin. Mrs. Mifflin's daughter testified that on one occasion in 1968 Mr. Hybarger said to Mrs. Mifflin about the form, "You have to sign it in order to get anything at all and when I leave I will adjust it or mark out some of the things and send you not as much." This statement allegedly was made after Mrs. Mifflin complained that she was being sent too much merchandise. Mr. Hybarger denied making the statement and Mrs. Mifflin did not testify about it. There was no evidence that such a statement was made about any subsequent order, and specifically not the disputed one. Mrs. Mifflin testified that despite what she told Mr. Hybarger when he came, she "always wound up with the same run-of-the-mill and would be overstocked with one item and completely out of another item." She admitted that all material she received was listed on the order form which bore her signature except, of course, the two orders which were taken by telephone.

Mrs. Mifflin's defense generally was that she had been over-supplied by plaintiff for some time with goods not ordered, and that she had offered to return the goods but had been refused. Defendant's exhibits show that on June 17, 1969, plaintiff's credit manager wrote Mr. Hy-

barger stating that word had been received from Mrs. Mifflin that she was being overshipped by a significant amount and that she should not be sent more than $400.00 per month in merchandise thereafter. Plaintiff's exhibits and testimony and defendant's testimony reveal that the largest monthly shipment during the disputed period totaled from $286 to $289. A letter was received by plaintiff in October, 1969, after a shipment of $289 was received stating "Please! Do not send me anymore [sic] clothing." On January 5, 1970, in response to a debt reminder from the plaintiff, plaintiff received a letter from defendant stating that during the year of 1969 she had received over $2,000 more merchandise than had been ordered by her and that she desired to return it. In March, 1970 (after the disputed period), plaintiff's credit manager again communicated with Mr. Hybarger. He stated that more trouble with Mrs. Mifflin's account had developed, that she was to be shipped no more merchandise until a part balance was paid and that no more than $250 per month would be shipped after that. Another letter was written by defendant on July 1, 1970, stating again that overshipments were made and that excess was being held for return. At trial, Mrs. Mifflin produced and identified the goods. She admitted, however, that she did not know whether these goods were ordered or delivered during the disputed period, July, 1969, to January, 1970. Mrs. Mifflin later wrote to plaintiff in 1971 asking for reinstatement of service.

At the conclusion of the evidence, the trial court, sitting without a jury, gave judgment for defendant without opinion and plaintiff appeals.

■■ Plaintiff first asserts that defendant relied upon, but did not carry the burden of proof upon, an affirmative defense that she had been shipped items not ordered by her, had notified plaintiff of the overshipment, and had offered to return the items. Plaintiff cites several cases to support the major premise that the burden of proving an affirmative defense rests initially and throughout the trial with the party who asserts it (see, *e.g.*, *Ellis v. Cothran*, 117 Ill. 458; *Ermold v. Bear*, 358 Ill. 233; *Auer v. Wm. Meyer. Co.*, 322 Ill.App. 244; *Jones v. Katz*, 325 Ill.App. 65). We cannot but agree with this premise. Plaintiff goes on to assert the defendant did not meet this burden since there was no showing that specific items were not ordered, or that plaintiff was notified of overshipment of any specific items, and that defendant was unable to testify that the items held for reshipment included any item shipped during the disputed period. The evidence appears to support this position.

Defendant, however, states that she did not rely on an affirmative defense, but rather simply denied having accepted the goods under section 2—607 of the Uniform Commercial Code (Ill. Rev. Stat., ch.

26, § 2—607). She asserted this defense as a special defense under section 43 of the Civil Practice Act (Ill. Rev. Stat., ch. 110, § 43). This section provides for the assertion of affirmative defenses and "any ground or defense, whether affirmative or not, which, if not expressly stated in the pleading, would be likely to take the opposite party by surprise, must be plainly set forth in the answer or reply." The definition of an affirmative defense under section 43 has been held to be " 'whether the defense gives color to the opposing party's claim and then asserts new matter by which the apparent right is defeated * * *.' " (S.H.A., ch. 110, § 43, Historical and Practice Notes (1968); *Horst v. Morand Brothers Beverage Co.*, 96 Ill.App.2d 68, 80.) In *Horst* the court held that a denial of the existence of an agency relationship was not an affirmative defense. Defendant's position that denial of acceptance of goods does not constitute an affirmative defense finds support in Nordstrom, Handbook on the Law of Sales, § 431, which puts the burden of showing conformity on the seller, allowing the buyer simply to deny conformity and force the seller to prove it. But regardless whether the defense asserted was an affirmative one, the evidence simply does not support her position. Section 2—606 of the Uniform Commercial Code provides that acceptance of goods occurs when the buyer, after a reasonable opportunity to inspect the goods, (1) notifies the seller of acceptance, (2) fails to make an effective rejection or (3) "does any act inconsistent with the seller's ownership." The buyer (defendant) did not specifically inform plaintiff of the non-conformity of specific commercial units, but rather generally complained of overshipment. Defendant testified that she held goods allegedly not ordered for reshipment to plaintiff. But she could not identify them as having been shipped during the disputed period. There was no evidence of what was done with items allegedly overshipped during that period. But it is a reasonable assumption that if they were not held for reshipment they were offered for sale. This would appear to be an act inconsistent with the seller's ownership and constitute acceptance. Furthermore, the evidence showed complaint of overshipment by the defendant for the years preceding the disputed period. Defendant, however, had paid and continued to pay for those goods. While this fact would not preclude her from rejecting non-conforming goods in the future, it tends to indicate that her dissatisfaction was not such to cause her to terminate dealing with plaintiff.

▪ Plaintiff next asserts that since defendant paid for all goods received prior to July, 1969, she cannot now claim that they did not conform to the contract. Appellant cites *Illinois Glass Co. v. Ozell Co.*, 197 Ill.App. 626. There, the seller of bottles sued the purchaser for the price of the second of two shipments, the first having been paid for. The pur-

chaser filed a counter-claim, alleging damage of the first shipment. The court held that since the first shipment had been paid for and used by the purchaser, he could not claim damage of that shipment in an action on the other. In *Waukesha Canning Co. v. Henry Horner & Co.*, 138 Ill.App. 564, the court held that a buyer of canned corn could not rescind the contract of purchase on the ground that the corn was of substandard quality when he had resold as standard quality a substantial portion of the corn. While neither of these cases dealt exactly with the instant problem, the rationale that one cannot accept and pay for merchandise and then claim some defect in it as a defense to a suit on a subsequent purchase, appears applicable. We are concerned here only with $1,718.40 in merchandise shipped between July, 1969, and January, 1970.

■■ Defendant argues that this court should not reverse the factual findings of the trial court unless found to be "manifestly erroneous." In *Wall v. Lanahan*, 79 Ill.App.2d 62, this court stated that the trial judge's unique position as the arbiter of credibility of witnesses and weight of authority in a bench trial is so well established as not to require citation of authority. The plaintiff in the instant case, however, made a strong prima facie showing of defendant's liability on the contract. Defendant's only defense was the rejection of the extra merchandise. As we have noted, there was no showing of effective rejection of the merchandise shipped from July, 1969, to January, 1970. Thus, the trial court erred in entering judgment for defendant.

The judgment of the trial court is reversed and the cause remanded with directions to enter a judgment for plaintiff for $1,718.40 and costs.

Reversed and remanded with directions.

Mr. PRESIDING JUSTICE GEORGE J. MORAN took no part in the consideration or decision of this case.