**LORENZO BANFI di BANFI RENZO & CO., Plaintiff,**

v.

**DAVIS CONGRESS SHOPS, INC., d/b/a Davis For Men, et al., Defendant.**

**No. 82 C 7554.**

United States District Court,
N.D. Illinois, E.D.

July 25, 1983.

Gary P. Hollander, Hollander & Hollander, Chicago, Ill., for plaintiff.

Dennis A. Berkson, Glass & Berkson, Ltd., Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Lorenzo Banfi di Banfi Renzo & Company ("Banfi") sues Davis Congress Shops, Inc. d/b/a Davis For Men ("Davis") for payment of $56,123 allegedly owed on deliveries of 513 pairs of Banfi shoes to Davis. Davis has filed Counterclaims for the same amount,[1] alleging the shoes were non-conforming and not merchantable. Banfi has now moved under Fed.R.Civ.P. ("Rule") 56 for summary judgment on its claim.[2] For

---

1. If Davis has not in fact paid for the shoes, this Court has difficulty understanding why the ad damnum in its Counterclaims would precisely equal the purchase price—certainly at least a questionable measure of damages if Davis' alle-

gations are accepted. This opinion need not resolve that problem.

2. Banfi's May 17, 1983 Amendment to its Complaint added several corporate defendants, alleging they are Davis' alter egos. Defend-

the reasons stated in this memorandum opinion and order Banfi's motion is granted.

No controversy exists on the essential facts of Banfi's claim.[3] It is not disputed Davis ordered and received from Banfi, sometime in early summer 1982,[4] shoes billed at $56,123. Complaint Count I ¶ 2; Counterclaim Count I ¶¶ 4, 7; Givigliano Aff. ¶ 4; R. Mem. Exs. 1–3; S. Davis Dep. 7–8.

What the parties do contest is whether Davis timely informed Banfi the shoes received were non-conforming. Davis has submitted no record of such a communication to Banfi, but Davis' officials say Banfi was quickly notified the shoes were defective. S. Davis Aff. ¶¶ 8–9;[5] Weingarten Dep. 16–19. Davis' August 16 memo to Banfi (R.Mem.Ex. 5) does note "extreme problems with the fitting" of Banfi's shoes, but that memo followed several other July and August communications (*id.* Exs. 6–9) of lesser shipment problems. And those prior communications, both by the things they complain about and the things they do not, strongly imply Davis had *not* informed Banfi its shoe shipments were rejected as non-conforming before August 16.

Under the circumstances, however, that factual dispute about notification need not be resolved here (as it could not on a Rule 56 motion). After all, Davis' communication as to the non-conformity of Banfi's shipments goes only to the question of the proper exercise of Davis' right to reject the goods under the Uniform Commercial Code ("UCC"), Ill.Rev.Stat. ch. 26, §§ 2–601 and 2–602(1).[6] But even if it is assumed Davis did promptly notify Banfi the shoes were nonconforming, Davis' later actions (1) were inconsistent with its rejection of the goods and (2) constituted legal acceptance of those goods.

It is undisputed Davis (1) placed the Banfi shoe shipments in its inventory, (2) offered the shoes for sale and (3) in fact sold almost half of them by April 1983. S. Davis Dep. 23–25; Weingarten Dep. 19–23; R.Mem.Exs. 4, 9. Under the UCC such exercise of ownership by Davis,[7] even after rejection, was wrongful as to Banfi and constituted acceptance of the goods when "ratified" by Banfi (which here would simply mean Banfi's continued demand for payment). *See* Ill.Rev.Stat. ch. 26, §§ 2–602(2)(a) and 2–606(1)(c); *Ozite Corp. v.*

---

ants' Answer to the Amendment to the Complaint Count II ¶¶ 13 and 14 respond the named corporations are separate entities. This Court also need not now resolve any questions of corporate identity, because Banfi has moved for judgment only against Davis. R.Mem. 1 n. 1.

**3.** Banfi has submitted in support of its motion:
    1. the June 17, 1983 Affidavit of Banfi sales representative Enzo Givigliano ("Givigliano Aff.");
    2. copies of certain packing lists and invoices (R.Mem.Exs. 1–3);
    3. a copy of an April 13, 1983 letter from Davis' counsel to Banfi's counsel (*id.,* Ex. 4);
    4. copies of certain communications from Davis to Banfi (*id.,* Exs. 5–9);
    5. the deposition of Davis consultant-buyer Stephen Davis ("S. Davis Dep."); and
    6. the deposition of Davis consultant Shelly Weingarten ("Weingarten Dep.").
Davis has submitted the July 8, 1983 Affidavit of Stephen Davis ("S. Davis Aff.").

**4.** Though the exact dates of delivery are unclear, there apparently were two separate shipments. All dates without year designations were in 1982.

**5.** Because those paragraphs are evidently not based on S. Davis' personal knowledge, the statements would likely be inadmissible at trial. That would preclude their use on the current motion (see Rule 56(e)). But the Weingarten Dep. places the matter in issue.

**6.** Neither party disputes Illinois law applies to this diversity action under the principles of *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Moreover Illinois law is dictated whether Illinois courts continue to apply the old place-of-performance contracts choice-of-law rule, or instead move to the now generally prevailing "most significant contacts" test. *See Overseas Development DISC Corp. v. Sangamo Construction Co.,* 686 F.2d 498, 510–11 & n. 43 (7th Cir.1982).

**7.** Davis' placing the two shipments in its inventory and offering the shoes for sale were its decisive acts, constituting its exercise of ownership over the entire shipments. *See Phil Jacobs Co. v. Mifflin,* 23 Ill.App.3d 999, 1002–03, 320 N.E.2d 329, 332 (5th Dist.1974).

*F.C. Clothier & Sons Corp.,* 130 Ill.App.2d 716, 717–19, 264 N.E.2d 833, 834–35 (4th Dist.1970).[8] Davis thereby became obligated to pay for the goods. Ill.Rev.Stat. ch. 26, § 2–607(1).

### Conclusion

There is therefore no genuine issue of fact material to the question of Davis' liability to Banfi. Banfi is entitled to a judgment as a matter of law for $56,123 plus interest from the due dates of Banfi's invoices.[9]

---

**8.** *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.,* 86 Ill.App.3d 980, 986–88, 42 Ill.Dec. 25, 30, 408 N.E.2d 403, 408 (1st Dist. 1980) teaches a buyer rejecting goods might under some circumstances continue to use them without undermining that rejection—if the use is "reasonable." But offering allegedly defective goods for retail sale can in no way be such a "reasonable" use consistent with rejection of the same goods.

**9.** Of course Davis' Counterclaims are still pending. Davis should consult *Curtiss-Wright Corp. v. General Electric Co.,* 446 U.S. 1, 7–13, 100 S.Ct. 1460, 1464–67, 64 L.Ed.2d 1 (1980) and the related case law in our Court of Appeals should it wish to seek Fed.R.Civ.P. 54(b) certification of this order.