**ACC CHEMICAL COMPANY, INC., et al., etc., Plaintiffs and Counterdefendants,**

v.

**OLD DUTCH MATERIALS COMPANY, Defendant and Counterplaintiff.**

No. 84 C 9617.

United States District Court, N.D. Illinois, E.D.

April 30, 1986.

---

Eugene R. Wedoff, Jenner & Block, Chicago, Ill., for plaintiffs and counterdefendants.

Peter G. Swan, Emalfarb & Swan, Highland Park, Ill., for defendant and counterplaintiff.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Chemplex Company, Inc. ("Chemplex," used as a singular noun), a joint venture comprising ACC Chemical Company, Inc. and Getty Chemical Company, Inc., has sued Old Dutch Materials Company ("Old Dutch") for the purchase price of 178,900 pounds of polyethylene. Old Dutch has counterclaimed [1] on the ground the polyethylene allegedly failed to conform to the specifications in Old Dutch's order. Now Chemplex moves for summary judgment on its claim under Fed.R.Civ.P. ("Rule") 56. For the reasons stated in this memorandum opinion and order, the motion is granted.

Chemplex's compliance with this District Court's General Rule 12(e), coupled with Old Dutch's failure to controvert Chemplex's "statement of material facts as to which there is no genuine issue" (as required under General Rule 12(f)), establishes the simple set of facts relevant to the current motion. They are brief enough to be copied verbatim from Chemplex's Rule 56 motion:

1. In February, 1984, defendant Old Dutch placed an order with plaintiff Chemplex at Chemplex's offices in Rolling Meadows, Illinois, to purchase 178,900 bulk pounds of polyethylene 3998W. (Complaint, ¶ 4, admitted by defendant's Answer.)

2. The price for the polyethylene ordered by Old Dutch was $66,193. (Final Pre-Trial Order, Joint Exhibits B and D.)

3. The terms of sale for the order described above called for payment within 30 days of invoice and a charge of 1.5% per month for late payments. (Complaint, ¶ 6, admitted in defendant's Answer.)

4. The invoice date was February 17, 1984. (Final Pre-Trial Order, Joint Exhibit D.)

5. On February 21, 1984, the polyethylene ordered by Old Dutch was received for the account of Old Dutch by Master Mark in Albany, Minnesota. (Final Pre-Trial Order, Stipulation of Uncontested facts, ¶ 9.)

6. Master Mark consumed all of the polyethylene shipped by Chemplex in the manufacture of lawn edging for Old Dutch. (Id., ¶ 12.)

7. On June 4, 1984, Chemplex sent to Old Dutch a final demand for payment on the carload of polyethylene. (Id., ¶ 17.)

8. Old Dutch has made no payment for the polyethylene. (Id., ¶ 18.)

Old Dutch's consumption of the polyethylene in its manufacture of lawn edging clearly came within the meaning of "any act inconsistent with the seller's ownership" as that phrase is used in Ill.Rev.Stat. ch. 26, ¶ 2–606(1)(c).[2] Under that section of the UCC that act by Old Dutch (or on its behalf by Master Mark) was an *acceptance* of the goods. And under UCC § 2–607(1) such acceptance obligated Old Dutch to pay

---

[1]. Old Dutch has recently filed an Amended Counterclaim, which was answered by Chemplex March 31, 1986.

[2]. All further references to the Illinois version of the Uniform Commercial Code in chapter 26 of the Illinois Revised Statutes will take the form "UCC § —."

for the goods "at the contract rate." *Lorenzo Banfi di Banfi Renzo & Co. v. Davis Congress Shops, Inc.*, 568 F.Supp. 432, 433–34 (N.D.Ill.1983). That then entitles Chemplex to a judgment on its Complaint, for there is no genuine dispute as to any fact material to that claim.

Old Dutch resists that conclusion. It charges that the disclaimer of warranties contained in Chemplex's acknowledgement of the Old Dutch purchase order[3] was a "material alteration" within the meaning of UCC § 2–207(2)(b). From that Old Dutch reasons the disclaimer did not become a part of the parties' contract, thus creating a factual issue so as to preclude summary judgment. If relies on *Clifford-Jacobs Forging Co. v. Capital Engineering & Mfg. Co.*, 107 Ill.App.3d 29, 33, 62 Ill.Dec. 785, 788, 437 N.E.2d 22, 25 (4th Dist.1982).

But that asserted logic is really a non sequitur: Suppose arguendo Old Dutch's "material alteration" claim *is* right, and suppose further Old Dutch (notwithstanding its lack of objection to the terms of Chemplex's invoice and its consumption of all the polyethylene for its own purposes) can therefore assert Chemplex breached an implied warranty of fitness for a particular purpose. Even that best-case set of assumptions does not change the result on the current motion, for Chemplex's success on its claim does not impair the Old Dutch counterclaim for the alleged breach of warranty. As UCC § 2–607(2) says, "acceptance does not of itself impair any other remedy provided by this Article for nonconformity." And see *Lorenzo Banfi*, 568 F.Supp. at 434 n. 9.

From the materials submitted in the parties' FPTO form and from the parties' lawyers' oral representations during the pretrial conference that followed such submission, there is a serious question whether Old Dutch—having consumed the goods for their intended use in the regular course of the manufacturing process—can demonstrate any damages from the claimed breach of warranty (even assuming the breach occurred, as this opinion must). It is worth noting that Old Dutch's original counterclaim filed February 1, 1985 had asserted it "was forced to drastically reduce its selling price ... and, therefore, suffered damages in the amount of FIFTY–FIVE THOUSAND DOLLARS ($55,-000.00)," while any such claim is conspicuously absent from Old Dutch's Amended Counterclaim.[4] There is something inherently offensive about a buyer having had the full commercial use of the seller's goods and still resisting payment of even the first cent of the purchase price because of the kind of claim asserted in the Amended Counterclaim.

That, however, may be an issue appropriate for future consideration if Chemplex were to seek a Rule 54(b) determination on its claim (see *Curtiss-Wright Corp. v. General Electric Corp.*, 446 U.S. 1, 8, 10–11, 100 S.Ct. 1460, 1465, 1466–67, 64 L.Ed.2d 1 (1980)). For the present it is enough to hold there is no genuine issue of material fact, and Chemplex is entitled to a judgment as a matter of law, on the claim set forth in the Complaint. Chemplex is granted summary judgment on that claim.

---

**3.** Chemplex's acknowledgment form is Joint Ex. B to the parties' final pretrial order ("FPTO") form. Condition of Sale ¶ 11 included in that acknowledgement reads in part (all in capital letters):

> The foregoing warranties are exclusive, and are in lieu of all other warranties, whether written or oral, express or implied, including any warranty of merchantability and warran-

ty of fitness for a particular purpose, even if that purpose is known to the seller.

**4.** What the Amended Counterclaim alleges instead is that Old Dutch's agent (Master Mark Products Company) was "drastically delayed" in (1) processing the lawn edging and (2) shipping the lawn edging to Old Dutch's customers. But there is no indication at all as to how the alleged delays actually damaged Old Dutch.