**Vince FORD, d/b/a Fireworks Unlimited, Appellant (Defendant),**

v.

**STARR FIREWORKS, INC., Appellee (Plaintiff).**

No. 93–124.

Supreme Court of Wyoming.

May 10, 1994.

Vince Ford, pro se.

Jerry M. Smith and David W. Holbrook, Sigler and Smith Law Office, Torrington, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

TAYLOR, Justice.

A dispute over the merchantability of fireworks sold to a retailer by a wholesaler resulted in this appeal. The district court awarded damages to the wholesaler. The retailer contends that all the fireworks received were unmerchantable. Additionally, the retailer argues that he properly rejected the fireworks, never exercised ownership of the fireworks, and used reasonable care in returning the fireworks to the wholesaler.

We affirm.

## I. ISSUES

Appellant, the retailer, presents four issues:

I.   Whether the trial judge should have been disqualified because of bias and prejudice against the appellant Vince Ford.

II.   Whether the lower court erred in ruling that only some of the fireworks were not merchantable.

III.   Did the district court err in holding that the appellant exercised ownership of the rejected goods by selling some of the goods and by holding them in outlying retail outlets for an unreasonable amount of time.

IV. Did the lower court err when ruling that the appellant did not use reasonable care in returning the fireworks, and did not follow reasonable instruction given by the appellee.

## II. FACTS

In the spring of 1991, retailer Vince Ford (Ford) formed a contract with wholesaler Starr Fireworks, Inc. (Starr) for the sale of fireworks. Ford purchased various types of fireworks, including bottle rockets, in differing assortments from Starr. In May, 1991, Starr delivered the fireworks in one lot to Ford's warehouse in Lusk, Wyoming. The agreed price was $6,748.86. Ford did not immediately inspect the fireworks; instead, he distributed them to his retail outlets throughout Wyoming for resale to the public.

Approximately a week to ten days after the fireworks were distributed to the retail outlets, Ford discovered some fireworks were unsalable because of water damage and packaging problems. However, Ford did not inspect the remainder of the fireworks from the shipment. Ford telephoned Starr's sales representative to report the problems. Ford claimed that he instructed his employees not to sell any products received from Starr. Nevertheless, approximately one month later, Ford's Torrington, Wyoming store sold several cases of bottle rockets that had been purchased from Starr to another fireworks retailer. The buyer reported no problem with those fireworks and they were subsequently sold to customers of that retailer without reported problems.

On July 1, 1991, Ford travelled to Starr's office in Denver, Colorado to obtain replacements for the unsalable fireworks. Starr's sales representative refused to replace any goods until Ford either returned the fireworks or paid for them. The next day, Starr's sales representative sent two employees to Lusk to pick up the fireworks at Ford's warehouse. Ford only had a few of the fireworks in Lusk and refused to return any of the merchandise. Ford was aware of the planned July 2nd trip to Lusk by Starr's employees.

On August 3, 1991, Starr's sales representative travelled to Lusk to pick up the fireworks. Ford returned $1,476.87 worth of fireworks to the sales representative. Ford signed an acknowledgement indicating he still owed $5,251.99 to Starr.

Ford alleges that he returned the remaining fireworks to Starr's Denver office on August 13, 1991. Ford claims no one was available at the office, so he left the fireworks outside a side door. Starr never received those fireworks.

Starr filed a complaint on February 10, 1992 seeking damages. Ford answered and counterclaimed seeking $8,436.00 for expenses incurred in returning merchandise to Starr, for lost profits due to unsalable merchandise, and for damage to Ford's reputation as a fireworks retailer.

The district court found that the fireworks Ford returned to Starr on August 3, 1991 were unmerchantable; however, the fireworks which Ford had not returned or inspected were found to be merchantable. The district court also found that Ford had properly rejected the goods, but had wrongfully exercised ownership of the rejected goods by selling some of them and holding them at outlying retail outlets for an unreasonably long period of time. Finally, the district court found that Ford failed to hold the rejected goods with reasonable care and failed to follow reasonable instructions in returning the fireworks to Starr. The district court awarded damages to Starr of $5,251.99 plus statutory interest. Ford received nothing on his counterclaim.

## III. DISCUSSION

■ In reaching its judgment, the district court prepared detailed findings of fact and conclusions of law. In *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 538 (Wyo. 1993), we carefully reviewed the burden an appellant bears to persuade this court that a challenged finding of fact is clearly erroneous. "'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id.* at 538

(quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). The district court's conclusions of law are not binding upon this court and are reviewed de novo. *Hopper*, 861 P.2d at 538.

The Uniform Commercial Code, as enacted in Wyoming, permits a buyer to return nonconforming goods to a seller. If the goods or tender or delivery fail in any respect to conform to the contract, the buyer is permitted to reject the whole, accept the whole, or accept any commercial unit or units and reject the remainder. Wyo.Stat. § 34.1–2–601(a) (1991). The substance of this dispute involves which one of the three alternatives Ford exercised in returning the fireworks to Starr. Ford broadly argues that he rejected the whole. The evidence, however, supports a conclusion that Ford effectively rejected only some commercial units. Those units were returned to Starr and Ford's account was properly credited. Meanwhile, Ford's exercise of ownership over the other commercial units which he claimed to have rejected constituted an acceptance of those goods.

Ford asserts that the district court erred when it concluded that only some of the fireworks received from Starr were unmerchantable. Ford contends that his inspection of some of the fireworks disclosed packages with torn wrappings, mold or mildew on some fireworks, and paper wrappings which fell apart exposing the fireworks. Ford argues from this sampling that it was reasonable to assume all the goods delivered by Starr were unmerchantable.

While providing for an implied warranty of merchantability in the sale of all goods, the Uniform Commercial Code carefully defines when goods are merchantable:

(a) Unless excluded or modified (section 34.1–2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. * * *

(b) *Goods to be merchantable must be at least such as:*

(i) *Pass without objection in the trade under the contract description; and*

(ii) *In the case of fungible goods, are of fair average quality within the description; and*

(iii) *Are fit for the ordinary purposes for which such goods are used; and*

(iv) *Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and*

(v) *Are adequately contained, packaged, and labeled as the agreement may require; and*

(vi) *Conform to the promises or affirmations of fact made on the container or label if any.*

(c) Unless excluded or modified (section 34.1–2–316) other implied warranties may arise from course of dealing or usage of trade.

Wyo.Stat. 34.1–2–314 (1991) (emphasis added). The official comment to Wyo.Stat. § 34.1–2–314 explains: "Goods delivered under an agreement made by a merchant in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade under the description or other designation of the goods used in the agreement." *Id.* at cmt. 2.

Determining whether goods are merchantable depends upon the facts of each individual case. *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 25 Wash.App. 90, 605 P.2d 1275, 1278 (1979). *See also* C. Clifford Allen III, Annotation, *What Are "Merchantable" Goods Within Meaning Of UCC § 2–314 Dealing With Implied Warranty Of Merchantability*, 83 A.L.R.3d 694 (1978) (collecting cases). Merchantable goods are not necessarily of the best or highest quality, but instead are "measured by the generally acceptable quality under the description used in the contract." *Dickerson v. Mountain View Equipment Co.*, 109 Idaho 711, 710 P.2d 621, 624 (1985). Merchantability does not imply the best quality or perfection; instead, it requires goods which operate for their ordinary purpose. *American Fertilizer Specialists, Inc. v. Wood*, 635 P.2d 592, 595 (Okla.1981).

■ The evidence produced at trial established that at least some of the fireworks Ford claimed were unmerchantable passed without objection in the trade. After Ford rejected the fireworks, Ford sold two to three cases of the bottle rockets received from Starr to another fireworks retailer. This resale implies the merchantability of at least some of the fireworks. If the fireworks were unmerchantable within trade standards, another retailer would not have purchased the bottle rockets. Also, no customer complaints were ever received about the merchantability of the fireworks sold by the second retailer from the lot delivered to Ford by Starr.

Furthermore, Starr indicated that it received no complaints from any other purchaser of the remaining fireworks from the same shipment Ford claimed was unmerchantable. If all the fireworks received by Ford from Starr were unmerchantable, then other retailers who received fireworks from that same shipment would have rejected those goods as unmerchantable. Also, Starr's sales representative testified that some of the merchandise which Ford claimed was unmerchantable was later sold to other retailers without complaint after Starr recovered it from Ford.

As used in Wyo.Stat. § 34.1–2–314(b), "merchantable" is not synonymous with "perfect." 1 James J. White & Robert S. Summers, *Uniform Commercial Code*, § 9–8 at 476 (3d ed. 1988). The fireworks received by Ford, while not perfect, were of an "acceptable quality" within the trade. *Dickerson*, 710 P.2d at 624. We hold that the fireworks which Ford did not inspect or return to Starr were merchantable. Wyo.Stat. § 34.1–2–314(b)(i).

Next, Ford argues that the district court erred in concluding that Ford had wrongly exercised ownership of the rejected goods. While Ford admits he sold some of the rejected goods, he argues that the remainder was effectively rejected. Ford also contends that holding the goods at his retail outlets was not unreasonable.

The rejection of goods by a buyer is governed by Wyo.Stat. § 34.1–2–602(a) and (b) (1991):

(a) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.

(b) Subject to the provisions of the two (2) following sections on rejected goods (sections 34.1–2–603 and 34.1–2–604):

(i) After rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

(ii) If the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this article (section 34.1–2–711(c)), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

(iii) The buyer has no further obligation with regard to goods rightfully rejected.

■ A buyer who takes any action which is inconsistent with the claim that the goods have been rejected risks accepting the goods. 1 White & Summers, *supra*, § 8–2 at 396. *See* Wyo.Stat. § 34.1–2–606 cmt. 4 (1991). A buyer's rejection can be converted into an acceptance by acts which are inconsistent with the seller's ownership rights. *Linscott v. Smith*, 3 Kan.App.2d 1, 587 P.2d 1271, 1274 (1978). "The purpose of this requirement is to insure that the seller may regain possession of the goods in order to resell the goods or utilize them in order to minimize his loss." *Stroh v. American Recreation & Mobile Home Corp. of Colorado*, 35 Colo.App. 196, 530 P.2d 989, 993 (1975).

■ *Lorenzo Banfi di Banfi Renzo & Co. v. Davis Congress Shops, Inc.*, 568 F.Supp. 432 (N.D.Ill.1983) illustrates the obligation of a buyer to avoid the exercise of ownership of goods which the buyer claims are unmerchantable. The buyer, a retailer of men's shoes, purchased over 500 pair of shoes from the seller. *Id.* at 432. After the buyer allegedly rejected the shipment, the buyer placed the shoes in inventory at his store, offered the shoes for sale, and sold a number of those shoes to customers. *Id.* at 433. The

buyer's actions in placing the shoes in inventory and offering the shoes for sale were an exercise of ownership by the buyer. *Id.* at 433 n. 7. Furthermore, the court found that offering allegedly defective goods for retail sale was not a reasonable use of the goods consistent with rejection. *Id.* at 434 n. 8. The court held the buyer's actions constituted an acceptance of the goods. *Id.* at 433.

■ Similarly, Ford placed the rejected fireworks in inventory at his retail outlets. While he claimed to have withdrawn the goods from sale after the defects were discovered, Ford later sold several cases of the rejected bottle rockets to another retailer. Ford also held the rejected fireworks at his retail outlets for at least two months after providing notice of rejection to Starr. As a result, Starr's agents made two unsuccessful trips to Ford's warehouse to obtain the goods. In an industry with seasonal sales peaks, such a delay in making the rejected fireworks available to Starr was unreasonable.

Ford affirmed his exercise of ownership over the rejected fireworks when the portion of the shipment which was unmerchantable was returned to Starr on August 3, 1991. At that time, Ford indicated that he only desired to return about ten more cases of fireworks to Starr. There was no indication of an intent to return the entire order of 138 cases of fireworks. At that time, Ford signed an acknowledgment of his remaining debt to Starr of $5,251.99. Ford's signature acknowledging his debt is inconsistent with his claim that the entire order was rejected. We hold Ford wrongfully exercised ownership of the rejected fireworks. Wyo.Stat. § 34.1–2–602(b)(i).

■ Although Ford did not have any duty to return the fireworks to Denver, Wyo.Stat. § 34.1–2–602(b)(ii) requires a buyer to use reasonable care in holding the fireworks for the seller. A buyer who is also a merchant, Wyo.Stat. § 34.1–2–104(a) (1991), has a duty to follow reasonable instructions received from the seller. Wyo.Stat. § 34.1–2–603(a) (1991). Once Ford gratuitously offered to return the fireworks to Starr's Denver location, Ford was under a duty to return the fireworks in a reasonable manner. Starr's

sales representative informed Ford that the fireworks were to be delivered to a responsible person at Starr. The evidence discloses that Ford left the fireworks unattended outside Starr's downtown Denver business location. We agree with the district court that leaving the fireworks unattended outside a business on a busy street is unreasonable. We hold Ford failed to follow reasonable instructions in returning the fireworks to Starr. Wyo.Stat. § 34.1–2–603(a).

■ Finally, Ford contends that the district court judge should have disqualified himself *sua sponte* because of alleged bias and prejudice. W.R.C.P. 40.1(b)(4). This court has firmly established the rule that it does not review any issue raised for the first time on appeal. *Sheridan Commercial Park, Inc. v. Briggs,* 848 P.2d 811, 817 (Wyo.1993); *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.,* 843 P.2d 1178, 1189 (Wyo.1992). The only exceptions are jurisdictional issues and issues of such a fundamental nature that this court must recognize them. Neither exception exists here. *See e.g., Oatts v. Jorgenson,* 821 P.2d 108, 111 (Wyo.1991); *Epple v. Clark,* 804 P.2d 678, 681 (Wyo.1991); *Thatcher & Sons, Inc. v. Norwest Bank Casper, N.A.,* 750 P.2d 1324, 1328 (Wyo.1988); *White v. Fisher,* 689 P.2d 102, 105 (Wyo.1984); *ABC Builders, Inc. v. Phillips,* 632 P.2d 925, 941–42 (Wyo.1981); *Schaefer v. Lampert Lumber Co.,* 591 P.2d 1225, 1227 (Wyo.1979). Upon careful review, we find nothing in the record suggesting that this issue was raised before, or argued to, the district court.

## IV. CONCLUSION

The buyer's right to reject non-conforming goods represents a significant self-help remedy under the Uniform Commercial Code. 1 White & Summers, *supra,* § 8–1 at 388. However, the buyer must avoid any exercise of ownership of the rejected goods. The evidence produced in this case discloses an exercise of ownership by Ford and a subsequent failure to exercise reasonable care in returning the goods. As a result, the district

court properly awarded damages to Starr and denied Ford's counterclaim.

We affirm.