45 F.3d 425
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 AIR TECHNIQUES, INC.; Cleanaire, Inc., Plaintiffs-Appellants,
v.
CALGON CARBON CORPORATION, Defendant-Appellee.
 No. 93-1412.
 United States Court of Appeals, Fourth Circuit.
 Argued: July 27, 1993.
Decided: January 26, 1995.
 
 ARGUED: Ruth Atkinson Lusby, Blades & Rosenfeld, P.A., Baltimore, Maryland, for Appellants. Allen F. Loucks, Smith, Somerville & CASE, Baltimore, Maryland, for Appellee. ON BRIEF: Andrew Radding, Blades & Rosenfeld, P.A., Baltimore, Maryland, for Appellants. John J. Boyd, Jr., Smith, Somerville & Case, Baltimore, Maryland, for Appellee.
 Before RUSSELL, WIDENER, and HALL, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The appellants, Air Techniques, Inc. (ATI) and its subsidiary, Cleanaire, Inc., (Cleanaire) brought this diversity action against Calgon Carbon Corp. (Calgon) for damages arising out of Cleanaire's contract with Calgon for manufactured impregnated charcoal (carbon) which Cleanaire installed in M12A1 and M10A1 biological and chemical air filter canisters pursuant to ATI's contract with the United States Army. ATI and Cleanaire sued Calgon on claims of breach of express and implied warranties, breach of contract, and negligence, alleging that the carbon was defective. By consent of the parties, the case was referred to a magistrate judge under 28 U.S.C. Sec. 636(c), who granted summary judgment to Calgon and subsequently denied the plaintiffs' post-judgment motion to alter or amend the judgment. ATI and Cleanaire appeal from the entry of summary judgment in favor of Calgon and from the denial of their motion to alter or amend the judgment. We affirm.
 
 
 2
 In December of 1987, ATI and the United States Army entered into contract number DAAA09-88-0248 for M10A1 biological and chemical air filter canisters for use in gas masks. Cleanaire, an affiliate corporation of ATI, manufactured the canisters, using carbon supplied by Calgon pursuant to Cleanaire's purchase order number 1051, dated December 6, 1988. This one page document specified the purchase of
 
 
 3
 Impregnated charcoal type ASC, 120,000 lbs. Grade I, MILC-0013724
 
 
 4
 with a shipping schedule that began with the remainder of Lot # 1548. The following clauses also appeared on the purchase order:
 
 
 5
 THIS IS A U.S. GOVERNMENT PRIORITY ORDER.
 
 
 6
 CONTRACT NUMBERS--DAAA09-87-C-0903 and DAAA09-88-0248
 
 
 7
 MATERIAL CERTIFICATION AND TEST REPORTS REQUIRED.
 
 
 8
 GOVERNMENT SOURCE INSPECTION: Government Inspection is required prior to shipment from your plant. Upon receipt of this order, promptly notify the Government Representative who normally services your plant so that appropriate planning for Government Inspection can be accomplished.
 
 
 9
 Contract number DAAA09-88-0248 was ATI's contract to supply M10A1 canisters. The other government contract referred to on the purchase order is DAAA09-87-C-0903, a pre-existing contract to supply M12A1 gas filters, under which Calgon delivered the first shipments of lot # 1548. MIL-C-0013724 (carbon specification) is the military specification for impregnated charcoal used in gas masks, including Grade I. The carbon specification requires testing of the carbon for gas sorption of certain gases, including cyanogen chloride (CK), with a minimum test standard of 30 minutes CK gas life as tested in an M11A1 canister.[1]
 
 
 10
 Calgon's carbon had to pass these tests and receive approval from the Army before it could be shipped to Cleanaire for use in the canisters. The Army's Edgewood Arsenal testing facility tested random samples of the carbon that Calgon supplied from each lot that it manufactured. The carbon passed the Army tests pursuant to the carbon specification, including the 30 minute CK life test performed in M11A1 canisters.
 
 
 11
 Upon Army approval of the carbon, Calgon shipped it in lots to Cleanaire. The Army also required testing of the completed M10A1 canister, pursuant to military specification MIL-C-13864A (EA) (canister specification). Cleanaire performed in-house some of the tests required by the canister specification and the canisters passed these tests. Cleanaire forwarded randomly selected samples from each lot of canisters to the Army for further testing, including a 40 minute canister CK life test.[2] When the Army tested Cleanaire's M10A1 canisters, some of them failed the 40 minute canister CK life test and the Army rejected all lots of canisters in which failures had been detected, or a total of 10 lots out of the 28 submitted. The Army terminated the contract for default which brought about this suit.
 
 
 12
 The complaint alleged breach of express and implied warranties, breach of contract, and negligence, each cause of action based on the allegation that Calgon's carbon "was improperly impregnated and, as such, failed to meet the required military specifications for use in gasmasks." The essence of Cleanaire's claim is that the carbon must have been defective because its M10A1 canisters failed the 40 minute canister CK life test, and that this defect caused the M10A1 canisters to fail the Army tests, which resulted in ATI's failure to meet production requirements and the Army's termination of ATI's contract on August 27, 1990 for default.
 
 I.
 
 13
 Following discovery, the magistrate judge entered summary judgment in favor of Calgon and declined to alter or amend that judgment upon the post-judgment filing of an affidavit, which, taken most favorably for plaintiffs, is to the effect that there was, in fact, a defect in the carbon. The summary judgment was entered on the basis that no product defect had been shown, directly or circumstantially, which would justify recovery on the warranty or contract claims. The magistrate judge also decided that no cause of action was stated in the negligence count. From that judgment ATI and Cleanaire appeal.
 
 
 14
 In ruling on a motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, no genuine issue for trial exists and summary judgment is proper if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).
 
 II.
 
 15
 We first turn to the claims of breach of warranty and contract violation.
 
 
 16
 Applying Maryland law in this diversity case, the creation of express warranties is governed by Md. Com. Law Code Ann. Sec. 2-313 (1993), which provides that express warranties by the seller can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer, ..." and that "[a]ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the [affirmation or] description."
 
 
 17
 An express warranty is breached when a product fails to exhibit the properties, characteristics, or qualities specifically attributed to it by its warrantor, and therefore fails to conform to the warrantor's representations. McCarty v. E.J. Korvette, Inc., 347 A.2d 253, 264 (Md. Ct. Spec.App.1975). Cleanaire's purchase order specifies that the carbon shall be "Impregnated charcoal type ASC, 120,000 lbs. Grade I, MILC-0013724." Thus, the express warranty is that the carbon will meet the carbon specifications of MIL-C-0013724, and there is no dispute that the carbon passed the 30 minute carbon CK life test pursuant to this specification. ATI and Cleanaire argue that the reference on the purchase order to contract number DAAA09-88-0248, ATI's contract to supply M10A1 canisters to the Army, as well as a letter from Calgon dated March 10, 1988 support an express warranty that Cleanaire's M10A1 canisters containing Calgon's carbon would pass the 40 minute canister CK life test. This argument is misplaced as to the nature of express warranties, which by definition are expressed or articulated, and are not supported by inferences such as those advanced by ATI and Cleanaire. There is no argument but that the carbon in question met the express specific requirement.
 
 
 18
 Under Maryland law, every contract implies a warranty that the goods sold are merchantable, that is, that the goods 1) "[p]ass without objection in the trade under the contract description;" 2) "are of fair average quality within the description;" 3) "[a]re fit for the ordinary purposes for which such goods are used;" and 4) "[r]un, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved." Md. Com. Law Code Ann. Sec. 2-314 (1993). Again, the purchase order contract description is for Grade I carbon, meeting the carbon specifications of MIL-C-0013724 and Calgon's carbon was clearly merchantable according to this description. There is no evidence the carbon was not fit for the ordinary purpose of filtering certain toxic chemicals, and indeed it passed muster in all tests performed by the government under carbon specification MIL-C-0013724, including the 30 minute carbon CK life test in an M11A1 canister. ATI and Cleanaire argue, as before, that there is a more specific warranty of merchantability than the purchase order contract fairly supports. We conclude that the product met any implied warranty of merchantability created by Sec. 2-314. Under U.C.C. Sec. 2-314 (the section under consideration) "the standard [of quality] is measured by the generally acceptable quality under the description used in the contract." Dickenson v. Mountain View Equipment Co., 710 P.2d 621, 624 (Id. Ct.App.1985). Since the carbon met the government specifications named in the contract, it met the quality standards under Sec. 2-314.
 
 III.
 
 19
 ATI and Cleanaire also claim breach of the implied warranty of fitness for a particular purpose, pursuant to Md. Com. Law Code Ann. Sec. 2-315, which states:
 
 
 20
 Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.
 
 
 21
 No such implied warranty exists, however, "where the buyer has taken upon himself the responsibility of furnishing the technical specifications," Official Comment 2 to section 2-315, because the buyer is not relying on the seller's skill and judgment. Here, Cleanaire's purchase order designated the grade of carbon and the military's carbon specifications that it was expected to meet. The purchase order shows that Cleanaire intended to purchase one grade of carbon, so long as it passed the named specifications, which included the 30 minute carbon CK life test in an M11A1 canister. Therefore, we are of opinion that there was no implied warranty that this carbon would pass any test other than those of specification MIL-C-0013724. We also find persuasive Comment 5 which provides that "no warranty results" when "the buyer himself is insisting on a particular brand." See also White & Summers, Uniform Commercial Code 421 (3d ed.1988).
 
 
 22
 From what we have said with respect to the warranty claims, it is apparent that we are of opinion there is no contractual claim involved in this proceeding other than that expressed in the purchase order. Since there is no valid claim of breach of warranty, express or implied, we are also of opinion there is no other valid contractual claim involving the carbon in this case.
 
 IV.
 
 23
 Recovery based on negligence is not permitted for purely economic loss, but the loss of physical property is not such an economic loss. See A.J. Decoster Co. v. Westinghouse Elec. Corp., 634 A.2d 1330, 1333 (Md.1994) (holding that loss of chickens due to suffocation when defective electrical supply transfer switch failed to activate alternate power supply was not an economic loss, but was property damage actionable in tort). ATI and Cleanaire claim that the magistrate judge erred in dismissing their negligence count because they suffered property loss consisting of those canisters containing defective carbon. As did the magistrate judge, we have examined the negligence count in the complaint and do not find any claim for damage to the canisters. Rather, ATI and Cleanaire claim "loss of business, loss of profits, damage to its business reputation within the community, and incidental and consequential damages." Unlike the plaintiff in Decoster, ATI and Cleanaire failed to allege property damage and we are of opinion that the grant of summary judgment in favor of Calgon on this count was proper. See Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F.Supp. 312, 326 (D. Md.1983) (holding that a negligence complaint is properly dismissed where the plaintiff alleges only economic loss and fails to allege property damage); see also Wood Products, Inc. v. CMI Corp., 651 F.Supp. 641, 648 (D. Md.1986).
 
 V.
 
 24
 Our holding that no cause of action is stated in negligence and that the purchase order contract involved in this case gave rise to no express or implied warranties or contractual obligations that would justify a recovery on the facts of this case serves to sustain our conclusion that the judgment of the district court should be affirmed. Even if one of the warranties or contractual theories might be valid, however, an equally sufficient reason for affirming the judgment of the district court as to these claims is that expressed in the opinion of the magistrate judge, in which she found there was no product defect shown which would account for the failure of the canisters to pass the product test required by the Army, and neither was the same shown by exclusion or circumstantial evidence. So, as an alternate reason for our decision on that aspect of the case, we affirm also for the reasons expressed in the thorough opinion of the magistrate judge.
 
 
 25
 We are further of opinion that the magistrate judge did not abuse her discretion in declining to alter or amend the judgment or in striking the affidavit of Steinberg and declining to consider the same, it having been filed subsequent to the order granting summary judgment. We affirm that aspect of the case for the reasons expressed by the magistrate judge in her opinion found at JA I, p. 413.
 
 
 26
 The judgment of the district court is accordingly
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The M12A1 canister has a carbon bed depth of about 2 inches. The M11A1 canister has a bed depth of approximately 1.25 inches. The M10A1 canister has a bed depth of .75 inches
 
 
 [2]
 It is worthwhile here to reiterate the difference between the carbon specification CK life test and the canister specification CK life test. The carbon specification, pursuant to MIL-C-0013724, required all carbon to pass a 30 minute CK life test performed in M11A1 canisters, prior to being used in any canister. The canister specification, pursuant to MILC-13864A, required that the M10A1 canister pass a 40 minute CK life test